DODGE, Assessor, v. NEVADA NAT. BANK OF SAN FRANCISCO.

(Circuit Court of Appeals, Ninth Circuit. May 13, 1901.)

No. 667.

1. TAXATION—TIME OF ASSESSMENT BY RELATION—CALIFORNIA STATUTES.

Const. Cal. art. 13, § 8, provides that the legislature shall by law require each taxpayer to make and deliver to the county assessor annually a statement, under oath, setting forth all the real and personal property owned by him, or in his possession or under his control, at 12 o'clock m. on the first Monday of March. Pol. Code, § 3628 et seq., requires assessors to list and assess all property between the first Mondays in March and July to the person by whom it was owned at 12 o'clock m. on the first Monday in March, and also makes the tax so assessed a lien upon the real estate of the taxpayer from such date. *Held*, that under such provisions the taxable status of property was determined by its condition on the first Monday in March, at 12 m., and that property which on that date was not taxable under the statutes of the state was not required to be returned by the owner, and could not be assessed for taxation for that year, notwithstanding the passage of an act after that date, but before the time for the closing of the assessments, making it taxable, where such act operated only prospectively.

2. SAME—CONSTRUCTION OF STATUTE—RETROACTIVE OPERATION.

Under the provision of Pol. Code Cal. § 3, that no part of such Code is retroactive unless expressly so declared, which applies also to amendments as well as to the original Code, an amendatory act providing for the taxation of property which was not previously taxable, not passed so as to go into effect until after the date on which the taxable status of property for that year became fixed under the statutes, cannot be held retroactive, in the absence of any language declaring it so, merely because it was the intention of its supporters to have it passed in time to apply to taxation for the current year.

3. SAME—NATIONAL BANK SHARES.

The amendment to Pol. Code Cal. § 3608, providing for the taxation of national bank shares (St. 1899, p. 96), which went into effect March 14, 1899, was not retroactive, and did not authorize the assessment of such shares for the fiscal year beginning in 1899.

Appeal from the Circuit Court of the United States for the Northern District of California.

Franklin K. Lane, City Atty., and W. I. Brobeck, for appellant.

T. I. Bergin, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. Appellee brought this suit in the circuit court of the United States to enjoin appellant, as the assessor of the city and county of San Francisco, from enforcing an assessment made by him on the shares of stock held by it as a national bank.

Preliminary to a discussion of the legal questions raised, it should be stated that section 5219 of the Revised Statutes gives to the several states the right to assess and tax the shares of a national bank under certain conditions, subject to certain restrictions. It reads as follows:

"Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the state within which the association is located; but the legislature of each state may determine and direct the manner and place of taxing all the shares of the national banking associations located within the state, subject only to the two restrictions that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by nonresidents of any state shall be taxed in the city or town where the bank is located, and not elsewhere."

After the decision in People v. Badlam, 57 Cal. 594, the legislature added to the revenue law what is designated as section 3608, Pol. Code, which it was supposed would be sufficient provision to authorize assessments to be levied upon shares of stock in the national banks. The question being presented to the court in McHenry v. Downer, 116 Cal. 20, 47 Pac. 779, whether the legislature had made proper provision by said section for the assessment and taxation of national bank shares, the court decided that no proper provision had been made by the state for the exercise of that power. At the next session of the legislature it passed and transmitted to the governor for his approval a bill entitled:

"An act to amend section 3608 of the Political Code of the State of California, relating to the general revenue of the state, and to property liable to taxation for the purpose of revenue; and to add new sections, to be known as sections numbers 3609 and 3610; also, relating to the general revenue of the state, and of property liable to taxation, for the purpose of revenue." St. 1899, p. 96.

The governor not having signed or returned the bill to the legislature within 10 days (exclusive of Sundays) of its receipt by him, it became a law March 14, 1899, under the provisions of the constitution (article 4, § 16), without his approval, and took effect immediately. Acting under the provisions of these sections, appellant, as the assessor of the city and county of San Francisco, proceeded to and did assess the shares of the national banks having their principal place of business in that city and county for the fiscal year 1899–1900. The court, after hearing the case, adjudged and decreed that this statute "took effect on March 14, A. D. 1899, and not prior thereto, and was and is inoperative to authorize any assessment or taxation of any property therein mentioned and referred to liable and subject to taxation on the first Monday of March A. D. 1899, and the same was not and is not retroactive, and did not authorize the assessment of the stock of the complainant in the bill of complaint in said cause mentioned and alleged; * * * that the assessment of the stock of the complainant in the bill of complaint alleged and set forth was and is wholly unauthorized, null, and void, and of no effect whatever,"—and "perpetually and forever restrained and enjoined" the assessor, appellant herein, and his successors in office, from acting upon the assessment mentioned in the complaint, etc. Did the court err in entering this decree? This is the sole question presented by this appeal. Its determination requires a careful examination of certain constitutional provisions and statutory enactments of the state of California relative to the levy and the assessment of taxes, and of the principles of law applicable thereto. The case has been ably argued by the respective counsel, and the question has been fully and thoroughly discussed in all its features. It is claimed by appellee that the act in question is unconstitutional; but, before considering that question, which is one of great interest and importance, we will first consider and determine whether or not the court erred in entering the decree upon the ground therein stated.

Section 8 of article 13 of the constitution provides that:

"The legislature shall by law require each taxpayer in this state to make and deliver to the county assessor, annually, a statement, under oath, setting forth specifically all the real and personal property owned by such taxpayer, or in his possession, or under his control, at 12 o'clock meridian on the first Monday of March."

The provisions of the Political Code follow closely the rules prescribed in the constitution. Section 3628 of this Code provides, among other things, that:

"The assessor must, between the first Mondays of March and July of each year, ascertain the names of all taxable inhabitants and all property in this county subject to taxation, except such as is required to be assessed by the state board of equalization, and must assess such property to the persons by

whom it was owned or claimed, or in whose possession or control it was at 12 o'clock m. of the first Monday of March, next preceding."

Section 3629 provides that the assessor "must exact from each person a statement, under oath, setting forth specifically all the real and personal property owned by such person, or in his possession or under his control, at 12 o'clock m. on the first Monday in March." Section 3652 prescribes the form of oath the assessor must append to his assessment book, wherein he is required to swear that he has assessed the property referred to in section 3628 of that Code; that he has assessed such property to the persons by whom it was owned, or in whose possession or control it was, at 12 o'clock m. of the first Monday of March next preceding. Section 3717 declares that "every tax due upon personal property is a lien upon the real property of the owner thereof, from and after 12 o'clock m. of the first Monday of March in each year."

The contentions of the respective counsel may be briefly stated as follows: Appellant claims that on the face of the statute which became a law on March 14, 1899, and in the light of the previous legislation and decisions of the court in regard thereto, it was the evident intention of the legislature in passing the act to have it take effect immediately, and to have it apply to the assessment of taxes for the year 1899; that, this intention being manifest, it is the duty of the court to follow the plain intent of the legislature; that, in the matter of the assessment of this national bank stock, the assessor is permitted from the first Monday in March until the first Monday of July in each year, in which time to add to the assessment roll all property in his county liable to taxation in that time; that the shares certainly became liable to taxation on March 14, 1899; that at that time, and for many weeks subsequent thereto, the assessor was in the act of assessing all property within his county subject to taxation; that until the assessment roll was completed and turned over to the equalizers, on the first Monday in July, the assessor was empowered, and it was his sworn official duty, to place all property liable to taxation during that time upon such roll; that the act was designed to remedy the defects existing in the tax system prevailing at that time; and that the provisions of the constitution and Codes hereinbefore referred to were simply to fix a time when the ownership and valuation of property should be determined. On the other hand, the contention of the appellee is that, under the constitution and laws of California, the assessable character of property becomes fixed and determined on the first Monday of March at 12 o'clock m.; that, if not then subject to assessment, it cannot thereafter be made subject to assessment for that fiscal year; that the legislature cannot alter or change the date thus fixed; that the language of the act is purely prospective; that there is nothing in the language of the act expressly making it retroactive; that the assessor could have made his assessment and collected the tax on personal property as well on March 7, 1899, as he could in April, May, or June; that there was not anything in the provisions of the Political Code to sanction the idea that he could assess or collect taxes upon any personal

property in April, May, or June that he was not authorized to assess and collect on the 7th of March, or at any time previous to the 14th of March, the time when the act of the legislature became a law; that there is nothing in the provisions of the act authorizing any different course; that the lien of the tax relates to the property subject to assessment on the first Monday in March, and to none other; that there was an inherent want of power in the assessor to assess any of the stock of the complainant for the fiscal year ending June 30, 1900; and that the assessor had no authority to make any such assessment. We have given careful attention to all the authorities cited by the respective parties. We shall confine ourselves to a discussion of the points which, in our opinion, must govern and control our decision herein.

Was the statute operative to affect the levy and assessment of property for the year 1899? The rule is elementary that a statute can only become operative at a time and in the manner prescribed by the constitution. It is therefore manifest that the statute in question had no binding force or effect whatever prior to March 14, 1899. Undoubtedly the bill was introduced to remedy the defects in prior acts, so that the shares of national banks might be legally taxed. This was the object, intent, and purpose of the bill, as introduced in the legislature. But, in order to accomplish this intent, it was necessary that it should become a law on or before the first Monday in March. Of course, if the governor had approved the bill before that date, the question we have in hand would not have appeared, to worry "either court or counsel." But the mere fact that the supporters of the bill intended to have it passed in time for it to be approved by the governor, so as to become a law before the first Monday in March, does not show, or tend to show, that the legislature intended to make the law retroactive. It proves, if it proves anything, just the contrary. The bill was drawn to take effect immediately when it became a law. It did not become a law until March 14th. It therefore matters not what the intention of the legislature may have been when the bill was introduced. If it was, as we have supposed, to have it passed and approved so as to become a law prior to the first Monday in March, in order to avoid the question here raised, the legislature failed to carry out its intention in that direction. As a general rule, subject, perhaps, to certain exceptions in particular cases, it may be said that the meaning of a statute should be gathered by the courts from its language and the plain import of the words used therein, rather than from the thoughts and intentions of those who introduced the bill. Certain it is that the language of the statute is always the best evidence of the intention. If the language used is doubtful or uncertain, the law affords many aids that may be resorted to by the courts in order to arrive at its true meaning. But if the language is clear, plain, and unambiguous, and has but one meaning, it needs no construction, and the court must take it as it is used in the statute, without seeking for outside aid. Conceding, for the purposes of this discussion, that the legislature had the power to make this statute retroactive, as is held in several of the cases cited by

appellant, the fact is that it did not do so. There is no language used in the act evincing any such intent. It is apparent on the face of the statute that it was intended to apply to the future, not to the past. In Chew Heong v. U. S., 112 U. S. 536, 559, 5 Sup. Ct. 255, 28 L. Ed. 770, the court said:

"In U. S. v. Heth, 3 Cranch, 398, 413, 2 L. Ed. 479, this court said that 'words in a statute ought not to have a retrospective operation unless they are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intention of the legislature cannot be otherwise satisfied'; and such is the settled doctrine of this court. Murray v. Gibson, 15 How. 421, 423, 14 L. Ed. 755; McEwen v. Den, 24 How. 242, 244, 16 L. Ed. 672; Harvey v. Tyler, 2 Wall. 328, 347, 17 L. Ed. 871; Sohn v. Waterson, 17 Wall. 596, 599, 21 L. Ed. 737; In re Twenty Per Cent. Cases, 20 Wall. 179, 187, 22 L. Ed. 339."

In Dash v. Van Kleeck, 7 Johns. 477, 500, et seq., there is an elaborate, learned, and exhaustive discussion of this question by Mr. Justice Kent, which has universally received the approbation of the courts. Speaking of that case, the court in Sanford v. Bennett, 24 N. Y. 20, 23, said:

"It was laid down as a principle of universal jurisprudence that all laws are to be construed as furnishing a rule for future cases only, unless they contain language unequivocally and certainly embracing past transactions."

But it is unnecessary to review the authorities upon this subject, because the law as thus declared is embodied in a statutory enactment in section 3 of the Political Code of California, which expressly declares that "no part of it is retroactive unless expressly so declared," and this rule has been declared to apply to amendments to the Code, as well as to the original Code itself. Railroad Co. v. Shackelford, 63 Cal. 261; Water Co. v. Shaffer, 116 Cal. 518, 523, 48 Pac. 613. The contention of counsel for appellant that the provisions of the constitution and of the Codes do not prohibit the assessor from making a valid assessment after the statute became a law, because they only mention the time "when the ownership and valuation of property should be determined," falls far short of giving a proper construction of the constitution and Codes with reference to their application to the real question under consideration. The entire system of taxation in the state of California plainly contemplates the existence of property liable to be assessed for taxes, and that its assessment, at whatever date actually made, shall relate to some fixed period of time, and that the taxable status of the property is to be determined by its condition on that day. The constitution and Codes clearly designate the time when the assessable character of property becomes fixed, to wit, "at 12 o'clock, meridian, on the first Monday in March," and the question here involved must be determined with reference to that date. The initial right of the assessor to assess any property during the assessing period relates to that day. The assessor is not authorized to assess any property that is exempt from taxation on that day. The owner or party in control of property is not required to include in his list, to be given to the assessor, any property not subject to taxation on the first Monday of March in each year. That is the time the lien on the property for the taxes attaches, regardless of

the date when the assessment is made. The property assessed in this case was in existence on the first Monday in March. At that date there was no law in force which made it taxable.

From every standpoint that can be legally taken of this question the conclusion becomes inevitable that the attempted assessment in this case was not warranted by any law, and is absolutely null and void. This point is conclusive of the question presented, and renders it wholly unnecessary to consider the constitutional questions elaborately discussed by the respective counsel. The decree of the circuit court is affirmed, with costs.