## AIR-WAY ELECTRIC APPLIANCE CORPORATION v. ARCHER, Treasurer of State of Ohio, et al.

(District Court, S. D. Ohio, E. D.  February 11, 1922.)

No. 193.

1. **Statutes ⊝255—Act imposing "tax" on foreign corporations held revenue law, so that it went into effect as soon as approved and filed by Governor.**

Under the law of Ohio, as settled by decision, that a legislative act may be both a license and a revenue measure, and that it is immaterial whether the sum charged is characterized in the act as a fee, a tax, or an assessment, if on the whole it is clear that it is a tax, Gen. Code Ohio, § 8728—11, as amended by Act April 28, 1921 (109 Ohio Laws, p. 273), imposing a fee or tax on foreign corporations for the privilege of doing business in the state, based on the proportion of the authorized capital stock of the corporation represented by its property and business in the state, is a law providing for a tax within Const. Ohio, art. 2, §§ 1c, 1d, which provide that no law shall go into effect until 90 days after it shall have been filed by the Governor with the secretary of state, except that "laws providing for tax levies * * * shall go into immediate effect," and such law as amended became effective from May 17, 1921, when, after approval, it was filed by the Governor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Tax—Taxation.]

2. **Taxation ⊝40(1)—Privileges and franchises not subject to "property" valuation for purposes of taxation, within uniformity provision.**

Const. Ohio, art. 12, § 2, providing that all property shall be taxed uniformly according to its true value in money, is not a limitation on the power to tax rights, privileges, and franchises, which, though they may be valuable, are not "property," within the meaning of that section.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Property.]

3. **Commerce ⊝74—Statute taxing foreign corporations held not unconstitutional, as imposing burden on interstate commerce.**

Gen. Code Ohio, § 8728—11, providing for a tax on foreign corporations doing business in the state, based on the proportion of their authorized capital stock represented by their property and business in the state, *held* not unconstitutional, as imposing a burden on interstate commerce as applied to a private manufacturing corporation doing both an interstate and intrastate business, and which is taxed thereunder only in respect to the latter.

4. **Constitutional law ⊝284(1)—Rehearing before tax commission affords due process of law.**

A statute imposing a tax, the amount of which is determined by a state commission before which the taxpayer may be heard, and which has power at his instance to review its decisions, is not invalid, as denying due process of law, because it does not provide for an appeal to the courts.

---

⊝ For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. **Constitutional law ⨺100—Foreign corporation has no vested right which prevents increase of taxes.**

A foreign corporation, admitted to do business in a state, acquires no vested right that no change shall be made in taxing statutes affecting it, or in the classification of corporations for purposes of taxation authorized by the Constitution and laws of the state.

6. **Constitutional law ⨺229(1)—Inequality of taxation between domestic and foreign corporations not necessarily denial of equal protection of laws.**

That a statute imposing taxes does not operate alike upon domestic and foreign corporations does not necessarily render it invalid, as denying to foreign corporations the equal protection of the laws, even though the result is to favor domestic corporations, and where the inequality is incidental in the application of a system that is not arbitrary in its classification, and does not result from hostile discrimination, it is not sufficient to defeat the law.

7. **Constitutional law ⨺229(1)—Taxation ⨺37—Ohio statute providing for taxation of foreign corporations held constitutional and valid.**

Gen. Code Ohio, § 8728—11, providing the basis for taxation of foreign corporations doing business in the state, is a part of a comprehensive system of corporate taxation operating uniformly on all corporations of a given class, and is not unconstitutional as denying the equal protection of the laws.

8. **Constitutional law ⨺206(7)—Foreign corporation not "citizen," within privileges and immunities clause of Constitution.**

A corporation doing business in another state is not a "citizen" of such state, within the privileges and immunities clause of the federal Constitution.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Citizen.]

In Equity. Suit by the Air-Way Electric Appliance Corporation against R. W. Archer, Treasurer of the State of Ohio, and others. On motion for preliminary injunction. Denied, and decision on merits deferred.

Tracy, Chapman & Welles, of Toledo, Ohio, and L. F. Sater, of Columbus, Ohio, for plaintiff.

John G. Price, Atty. Gen., and Ray Martin and John M. Parker, Sp. Counsel, all of Columbus, Ohio, for defendants.

Before DONAHUE, Circuit Judge, and SATER and PECK, District Judges.

PER CURIAM. The court, as constituted for the hearing of this cause, was assembled, in accordance with the provisions of section 266 of the federal Judicial Code (Comp. St. § 1243), to determine whether a temporary injunction should issue on account of the alleged invalidity of certain statutory enactments by the General Assembly of Ohio.

The plaintiff, a Delaware corporation for profit, created in July, 1920, is engaged at Toledo, Ohio, in the manufacturing business. Its authorized capital stock consists of 400,000 shares of common non-par stock, one-half of which is denominated common stock, and the residue, as is permitted by section 8728—1, Ohio G. C., is known as founders' stock. It began to do business in Ohio August 1, 1920, and thereafter was duly admitted into the state for that purpose. The Ohio statute first recognizing corporations with no par value stock was

⨺For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

passed by the General Assembly April 16, 1919 (108 O. L. pt. 1, p. 507), section 11 of such act being designated section 8728—11 of the General Code. That section was repealed, and an amended section 8728—11 substituted in its stead, by the act of February 4, 1920 (108 O. L. pt. 2, p. 1287). The amended section was repealed by the enactment of April 23, 1921 (109 O. L., p. 273), and its place was taken by the present section 8728—11, which section by appropriate reference is also amendatory of section 5503. The recital in the notice given to plaintiff that the fee or tax of $20,000 levied against it for the privilege of exercising its franchises in Ohio for the fiscal year beginning July 1, 1920, was charged under section 5503, is therefore unimportant, although the rate at which the fee or tax was computed is that fixed by the present section 8728—11.

Under section 5499, a foreign corporation for profit doing business in the state, and owning and using a part or all of its capital or plant in the state, is annually, within the month of July, required to make a verified report, in writing, on a prescribed form, to the tax commission, showing, among other things, the amount of its capital stock subscribed, issued, and paid up, the character of its business, and the places in which it is conducted, the name and location of its office or offices, and of its officer or officers, the value of the property owned and used by it in the state, where such property is situated, and the value of its property owned and used outside of the state, and where such property is located. Sections 5499, 5500, 5501. From such report and other pertinent facts coming to its knowledge, the tax commission, on the first Monday in September, determines the proportion of the company's authorized capital stock represented by its property and business in the state, and on the first Monday of October certifies the amount of such proportion to the auditor of state. Section 5502.

On or before October 15 the auditor is required, by the present section 8728–11, to charge, under section 5503, for collection from such company for the privilege of exercising its franchises in the state, a fee of three-twentieths of 1 per cent. upon the proportion of the authorized preferred stock represented by property owned and used and business transacted in the state, and 5 cents per share upon the proportion of the number of shares of authorized common stock represented by property owned and used and business transacted therein. The fee is payable on or before the following December 1. Section 5503. The fees, taxes, and penalties required to be levied are made a first and best lien on all the corporation's property. Section 5506. The penalties which may be inflicted for nonpayment of the sum assessed are a fine for each day's delinquency (section 5507), the cancellation of the corporation's authority to do and an injunction against its doing business within the state (sections 5509, 5512), and ouster by quo warranto proceedings from exercising its privileges and franchises in Ohio.

The plaintiff executed its verified report on July 30, 1921, and filed the same with the tax commission on August 1. Its report shows that, of the 400,000 shares of authorized stock, 40,475 shares of so-called founders' stock and 10,010 shares of common stock had been subscribed for and issued; that the actual value of its property, including its

real estate of the value of $29,500, is $458,278.56, which sum is also the total value of its property owned and used in Ohio; that the amount of business transacted in Ohio in the 11 months of its operation was $250,594.58; that the value of its property owned and used outside of Ohio is nothing; that all of its business had been "handled in Ohio"; and that all of its property is taxed in Ohio—the assessed value for taxation being $213,240. Plaintiff charges injunctive relief should be granted because the fee or tax assessed against it constitutes a cloud upon the title to its property, is erroneously computed, excessive, confiscatory, and based on enactments (especially sections 5503 and 8728—11) which create a classification which is unreasonable, arbitrary, unsubstantial and discriminatory against foreign as compared with domestic corporations, which are in conflict with the provisions of the state Constitution prohibiting the enactment of retroactive laws (section 28, art. 2), the equal protection clause (section 2, art. 1, Bill of Rights), and the uniform taxation rule (article 12, § 2), and which are also violative of the commerce clause of the federal Constitution, the due process of law and the equal protection clauses of the Fourteenth Amendment and also the clause prohibiting the making and enforcement of laws which abridge the privileges or immunities of citizens of the United States.

[1] At the threshold is the question as to whether the sum charged against plaintiff was imposed under a retroactive law and is therefore illegal, for the reason that section 28, art. 2, of the Constitution of Ohio declares:

"The General Assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts."

The act embracing the present section 8728—11 was approved by the Governor on May 14, 1921, and filed with the secretary of state on May 17. Section 1c, art. 2, of the state Constitution provides that "no law passed by the General Assembly shall go into effect until ninety days after it shall have been filed by the Governor in the office of the secretary of state," excepting, by the terms of section 1d, "laws providing for tax levies, appropriations for the current expenses of the state government and state institutions, and emergency laws necessary for the immediate preservation of the public peace, health or safety, shall go into immediate effect." The act contains no emergency clause, and does not purport to be and is not an emergency law. The basis for the computation of the plaintiff's franchise tax or fee is the proportion of the authorized stock, preferred and common, represented by property owned and used and business transacted in the state at the close of June 30. If the act became effective when it was filed with the secretary of state on May 17, the computation of the sum charged against the plaintiff must be according to the present section 8728—11. Dodge v. Nevada Nat. Bank, 109 Fed. 726, 730, 48 C. C. A. 626 (C. C. A. 9). If the act did not become effective until 90 days subsequent to such filing—i. e., until August 15—the tax or fee assessed should be reckoned at the much lower rate prescribed by the act of February 4, 1920; else a tax would be retroactively imposed on subject-matter not theretofore liable to the same. Dodge v. Nevada Nat. Bank, supra; Smith v.

279 F.—56

Dirck, 283 Mo. 188, 223 S. W. 104, 11 A. L. R. 510; Wagoner v. Evans, 170 U. S. 588, 18 Sup. Ct. 730, 42 L. Ed. 1154; Burgess v. Salmon, 97 U. S. 381, 24 L. Ed. 1104; Metz v. Hagerty, 51 Ohio St. 521, 38 N. E. 11; Cincinnati v. Seasongood, 46 Ohio St. 296, 21 N. E. 630; Drexel & Co. v. Commonwealth, 46 Pa. 31; Young v. Town of Henderson, 76 N. C. 420.

A tax may be laid for the double purpose of regulation and revenue. Adler v. Whitbeck, 44 Ohio St. 539, 572, 9 N. E. 672; Fritsch v. Board of Commissioners of Salt Lake City, 15 Utah, 83, 95, 47 Pac. 1026; Parish of E. Feliciana v. Levy, 40 La. Ann. 332, 4 South. 309. It may also be exacted for the privilege of exercising corporate franchises in the state and for general revenue (State v. Ferris, 53 Ohio St. 314, 329, 41 N. E. 579, 30 L. R. A. 218; Ashley v. Ryan, 49 Ohio St. 504, 525, 31 N. E. 721; Gundling v. Chicago, 177 U. S. 183, 189, 20 Sup. Ct. 633, 44 L. Ed. 725; the enactment of laws providing for excise and franchise taxes being authorized by section 10, art. 12, of the state Constitution. If the statute of 1921 was enacted as a revenue measure, as well as to fix the charge against foreign corporations for the privilege of exercising their franchises in the state, it then falls within the terms of section 1d, art. 2, and became effective on May 17. Section 3728—11 and sections 5503 and 5516, which are a part of the Ohio Tax Commission Act, mention the sum to be charged as a fee. Other sections of such act characterize such sum as a fee or tax. See sections 5505, 5506, 5509, 5511, 5512.

The terms "fee" and "tax" were, in the legislative mind, convertible and equivalents. It is immaterial whether the sum charged is characterized as a fee, a tax, or an assessment, if on the whole it is clear that it is a tax. Ashley v. Ryan, 49 Ohio St. 525, 31 N. E. 721. In view of the provisions of section 181a, R. S. (now section 270, G. C.), that all money paid into the state treasury, the disposition of which is not otherwise provided by law, shall be credited by the auditor of state to the general revenue fund, it was held, in Ashley v. Ryan, 49 Ohio St. 526, 31 N. E. 721, that it is not necessary that the object of a given statute should be stated to be the imposition of a tax for revenue purposes in order to constitute it a statute of that character. The tax or fee charged against a foreign corporation under the statute here considered is expressly required to be paid to the state treasurer (sections 5503, 5504), and section 5491 further provides that all taxes received by the state treasurer under the provisions of the Tax Commission Act shall be credited to the general revenue fund. But any exaction which is made a means of supplying money for the public treasury to defray the expenses of government, and any sum demanded as a franchise fee or excise tax, which goes into the state treasury and constitutes a part of its general fund, is a tax (Mays v. Cincinnati, 1 Ohio St. 268, 273, 274), and the law providing for the same is a revenue law (Peyton v. Bliss, Fed. Cas. No. 11,055).

A portion of the Tax Commission Act was reviewed by this court in Ohio River & W. Ry. Co. v. Dittey, 203 Fed. 537, 540, and in Ohio Tax Cases, 232 U. S. 576, 592, 34 Sup. Ct. 372, 58 L. Ed. 737. It was ruled in both cases that the sum assessed was an excise or privilege tax.

The statute of April 11, 1902 (95 O. L. 124), whose constitutionality was determined in Southern Gum Co. v. Laylin, 66 Ohio St. 578, 64 N. E. 564, in fixing the annual fee to be charged domestic and foreign corporations, respectively, for the privilege of doing business in Ohio, employed the same language (excepting as to the amount of the fee) as occurs in sections 5498 and 5503 of the Tax Commission Act. It was said (232 U. S. at page 593, 34 Sup. Ct. 372, 58 L. Ed. 737) that the tax exacted by the statute is an excise or franchise tax for general revenue. In the later decision of Saviers v. Smith, 101 Ohio St. 132, 135, 142, 128 N. E. 269, the act imposing a license tax on motor vehicles for the purpose of certain incidental police regulations and the maintenance and repair of public roads was held to be manifestly for the production of revenue and is in fact a revenue measure. In the light of the authorities and the provisions and purposes of the statute here considered it is clear that such statute is a general revenue measure and is not retroactive, but became immediately operative under section 1d, art. 2, of the state Constitution, at the time it was filed with the secretary of state on May 17. See, also, State v. Roose, 90 Ohio St. 345, 107 N. E. 760. If the law is valid, the plaintiff is taxable at the rate specified therein. The insistence that the act authorizing corporations having no par stock is not a revenue measure, because only one or two of its sections deals with the tax to be imposed, is unsound, as appears from the teachings of the Dittey Case, the Ohio Tax Cases, and Saviers v. Smith.

[2] There is no merit in the contention that the enactments under consideration are obnoxious to section 2, art. 12, of the state Constitution, which declares that laws shall be passed taxing by uniform rule all moneys, credits, investments in bonds, stocks, joint-stock companies, or otherwise, and also real and personal property according to its true value in money. That section is not a limitation upon the power to tax rights, privileges and franchises. A franchise may be valuable, but it is not property, within the meaning of such section, and is not, therefore, taxable under it. State v. Ferris, 53 Ohio St. at pages 328, 329, 41 N. E. 579, 30 L. R. A. 218; Western Union Telegraph Co. v. Mayer, 28 Ohio St. 521, 522; Ashley v. Ryan, 49 Ohio St. at page 525, 31 N. E. 721; Ohio River & W. Ry. Co. v. Dittey (D. C.) 203 Fed. 544; Ohio Tax Cases, 232 U. S. at pages 588, 589, 34 Sup. Ct. 372, 58 L. Ed. 737. The above-mentioned section is without application to the present case.

[3] It is firmly settled that a state law is unconstitutional and void which requires a party, natural or artificial, to take out a license or pay a franchise tax for carrying on interstate commerce, and, if such commerce is burdened directly or by necessary operation of the law now before us, when reasonably interpreted, such law must be adjudged invalid, whatever may have been the purpose for which it was enacted, and although the plaintiff as a manufacturing company may do both an interstate and a local business. In whatever language the law may be couched, its purpose must be determined by its natural and reasonable effect. Among the cases relied upon by the plaintiff and illustrative of the principles above announced are Western Union Tel. Co. v. Kansas,

216 U. S. 1, 30 Sup. Ct. 190, 54 L. Ed. 355, in which a law was held unconstitutional, as trammeling interstate commerce, which exacted as a charter fee to be credited to the permanent school fund, and as a condition of a corporation's right to do local business in Kansas, payment of a given per cent. of its authorized capital, representing all its property both within and without the state, and International Paper Co. v. Massachusetts, 246 U. S. 135, 38 Sup. Ct. 292, 62 L. Ed. 624, Ann. Cas. 1918C, 617, in which a statute, also revenue in its character, was held to place a prohibitive burden on interstate commerce, and was overthrown because it imposed a license fee or excise tax of a given per cent. of the par value of the entire authorized capital stock, and consequently on the entire business and property of a foreign corporation doing both an inter and an intra state business and owning property in a number of states.

Every case, however, involving the validity of a tax, must be decided upon its own facts. Baltic Min. Co. v. Massachusetts, 231 U. S. 68, 86, 34 Sup. Ct. 15, 58 L. Ed. 127; Kansas City, M. & B. R. Co. v. Stiles, 242 U. S. 111, 119, 37 Sup. Ct. 58, 61 L. Ed. 176. Considering the language of the Ohio statute and its natural and reasonable effect, it is not subject to a construction that would impose a tax on the interstate commerce transacted by a foreign corporation, and must be held not to embody the objectionable features found in the statutes called in question in Western Union Tel. Co. v. Kansas, International Paper Co. v. Massachusetts, or in such cases as Looney v. Crane Co., 245 U. S. 178, 38 Sup. Ct. 85, 62 L. Ed. 230, Pullman Co. v. Kansas, 216 U. S. 56, 30 Sup. Ct. 232, 54 L. Ed. 378, and Ludwig v. Western Union Tel. Co., 216 U. S. 146, 30 Sup. Ct. 280, 54 L. Ed. 423. In Western Union Tel. Co. v. Kansas and Pullman Co. v. Kansas, for instance, the corporations were chartered to engage in interstate commerce. Their interstate and intrastate business were necessarily intimately, if not inseparably, connected, and, being public service corporations, they had no option to decline to engage in either. In Southern Ry. Co. v. Greene, 216 U. S. 400, 30 Sup. Ct. 287, 54 L. Ed. 536, 17 Ann. Cas. 1247, the plaintiff had entered the state of Alabama in compliance with the laws of that state, had acquired property permanently located, and had engaged in both inter and intra state commerce. A new and additional franchise was thereafter imposed upon it for the privilege of doing business, which was not imposed upon domestic corporations.

The plaintiff's situation is not the same as that of the plaintiff in any of the three cases just mentioned. It is a manufacturing company, not a public service corporation, and is clothed with the right to confine its operations to such classes of business and to such localities as it sees fit. The distinction between cases of the character of this and the last three named is clearly drawn in Baltic Min. Co. v. Massachusetts, Kansas City M. & B. R. Co. v. Stiles, Northwestern Mut. L. Ins. Co. v. Wisconsin, 247 U. S. 132, 140, 38 Sup. Ct. 444, 62 L. Ed. 1025, and Chaney Bros. Co. v. Massachusetts, 246 U. S. 147, 156, 157, 38 Sup. Ct. 295, 62 L. Ed. 632. By the express language of the Ohio statute the tax imposed affects only the proportion of the authorized stock, common and preferred, represented by property owned and used and

business transacted in the state. Such proportion is easily ascertained. The plaintiff and all others similarly situated are required to keep and report separately the value of their property owned and used and business transacted in interstate and intrastate business—such being but a matter of mere bookkeeping—for the purpose of franchise taxation, and to submit such amounts separately to the tax commission. The proportion of authorized capital stock is only used as the measure of a tax, lawful in itself, without the necessary effect of burdening interstate commerce. The method of obtaining such proportion is likened to that provided by the Massachusetts law upheld in Western Union Tel. Co. v. Massachusetts, 125 U. S. 530, 552, 8 Sup. Ct. 961, 31 L. Ed. 790. In its exclusion of interstate commerce transactions from taxation, the language of section 8728—11 is perhaps even more explicit than the sections of the Tax Commission Act imposing a tax on railroads. Nevertheless, in the Dittey Case (D. C.) 203 Fed. at pages 540, 548, and the Ohio Tax Cases, 232 U. S. at page 591, 34 Sup. Ct. 372, 58 L. Ed. 737, there was a refusal to hold that the act as applied to railroads lays a burden on interstate commerce. The statute in question does not offend the commerce clause of the Constitution. In view of the conclusion thus reached, it is clear that the act, properly construed, does not deny to plaintiff due process of law, and that plaintiff may not be taxed on its interstate business and also on the proportion of its authorized stock represented by property owned and used and business transacted in other states.

[4] Nor is there merit in the claim that a foreign corporation is not accorded a hearing before the imposition of the tax. In determining the proportion of the authorized capital of a foreign corporation with reference to which the tax is imposed, the tax commission considers the company's verified report and any other facts coming to its knowledge. Section 5502. Before such determination and the certification thereof to the auditor of state are made, the corporation or any person interested may apply to the commission for a review and correction of its finding. The record suggests the plaintiff took no action touching the tax to be levied against it until after notice of the amount thereof had been given it by the state treasurer. It then by letter lodged complaint with him and the tax commission, and was informed no mistake had been made in assessing the tax. Subsequently a representative of plaintiff interviewed the chairman of the commission, at the conclusion of which the chairman declined to reduce the amount assessed.

The Tax Commission Act (102 O. L. 224) amply provides for a hearing on the part of the taxpayer before an assessment is made against it. The commission is authorized and directed to be in continuous session and open to the transaction of business during all of the business hours of each and every day, excepting Sundays and holidays (section 4); to keep a record of all its proceedings (section 4); to adopt reasonable and proper rules and regulations to govern its proceedings and to regulate the mode and manner of all valuations of real and personal property, apportionments, investigations, inspections, and hearings (section 12); to conduct investigations, inquiries, and hear-

ings, to issue orders, and to render decisions (section 7), the decisions of the Commission to be based upon its examination of all the testimony and records (section 19) ; to inspect the books, accounts, records, and memoranda of any corporation, to administer oaths, and to examine any corporate officer or agent (section 14) ; to require any corporation or witness, by order or subpœna to be served upon it as in a case pending in the common pleas court, to produce under penalty any books, papers, records, and the like (sections 15, 23), and to cause disobedience to any such order or subpœna to be punished as contemptuous (section 24) ; to provide for stenographic reports of evidence taken before it and cause the same to be transcribed (section 28) ; to take the required action for the payment of fees to officers serving subpœnas and the fees and mileage of witnesses (section 25) ; and to call to its assistance the Attorney General of the state, or, under his direction, the prosecuting attorney of any county (section 11). The corporation is given the privilege of subpœnaing witnesses (section 25) and of taking the depositions of others within or without the state (section 27).

Section 5517 specifically accords a hearing. The hearing afforded, although less formal, may be substantially as exhaustive as a trial in a duly organized court. In Hodge v. Muscatine County, 196 U. S. 276, 281, 282, 25 Sup. Ct. 237, 240, 49 L. Ed. 477, it was said:

"If the taxpayer be given an opportunity to test the validity of the tax at any time before it is made final, whether the proceedings for review take place before a board having a quasi judicial character, or before a tribunal provided by the state for the purpose of determining such questions, due process of law is not denied. It was held by this court in Pittsburgh, etc., Ry. Co. v Backus, 154 U. S. 421, 426, that a hearing before judgment, with full opportunity to present the evidence and the arguments which the party deems important, is all that can be adjudged vital. See, also, King v. Mullins, 171 U. S. 404."

See, also, Louisville & N. R. Co. v. Greene, 244 U. S. 522, 536, 37 Sup. Ct. 683, 61 L. Ed. 1291, Ann. Cas. 1917E, 97.

The plaintiff may not complain because the statute provides no appeal from the decision of the tax commission. The right of appeal is not essential to due process of law. Reetz v. Michigan, 188 U. S. 505, 508, 23 Sup. Ct. 390, 47 L. Ed. 563.

[5] When the plaintiff voluntarily sought and was granted the privilege of transacting business in Ohio, it was charged with knowledge of the long-established Ohio rule in the taxation of corporations, domestic and foreign, and of their classification for that purpose. By the provisions of the Willis Act (95 O. L. 124), which was sustained in Southern Gum Co. v. Laylin (decided in 1902), 66 Ohio St. 578, 64 N. E. 564, corporations were so classified with reference to the annual fee to be paid by them that domestic corporations were required to pay one-tenth of 1 per cent. upon all their subscribed or issued and outstanding capital stock, and foreign corporations were taxed one-tenth of 1 per cent. upon the proportion of their authorized capital stock represented by property owned and used and business transacted in Ohio. The classification thus made has persisted. The precise language employed in the Willis Act as to the fee to be charged domestic

.corporations is found in section ·5498, and as to that to be assessed against foreign corporations in sections 5503 and 8728—11. The syllabus of the Southern Gum Company Case (the syllabus in Ohio stating the law of the cause with reference to its facts) makes it clear that the classification above mentioned as to the kinds of corporate entities was approved in its entirety.

At the time the plaintiff was authorized to do business in Ohio, section 8728—11, as enacted in 1919 (108 O. L. pt. 2, p. 1287), required a domestic corporation having no par stock to pay as an annual franchise tax three-twentieths of 1 per cent. upon all its subscribed or issued and outstanding preferred stock, plus 10 cents for each share of its common stock subscribed or issued and outstanding, regardless of whether the property represented by it in whole or in part is within or outside of the state, while a foreign corporation having the same kind of stock was required to pay annually as a franchise tax under section 5503 three-twentieths of 1 per cent. of the proportion of its authorized preferred stock represented by property owned and used and business transacted in the state, plus one cent for each share of its authorized common stock. The statute thus described discriminated against domestic corporations. The act of 1920 (109 O. L. 273) amended section 8728—11 by making the charge on common stock for both classes of corporations five cents per share, thereby placing them on an equal, or at least a more nearly equal, footing, and maintaining the classification policy which had so long obtained in the state. If the early enactments on non-par stock were unchangeable, imperfections and errors in legislation would become constitutional rights; but the plaintiff, when admitted to do business in Ohio, acquired no vested right to have perpetuated a discriminatory law favorable to itself.

Section 2, art. 13, of the state Constitution, expressly provides that corporations may be classified, and that there may be conferred upon proper boards, commissions, and officers such supervisory and regulatory powers over their organization, business, and issue and sale of stocks and securities, and over the business and sale of the stocks and securities of foreign corporations in this state, as may be prescribed by law; and, as heretofore stated, section 10, art. 12, authorizes the enactment of laws providing for excise taxes. The state did not exceed constitutional limitations by enacting a new and more onerous law regarding the franchise tax of foreign corporations. In Cheney Bros. Co. v. Massachusetts, 246 U. S. at page 157, 38 Sup. Ct. 297, 62 L. Ed. 632, it is ruled that—

"A state does not surrender or abridge its power to change and revise its taxing system and tax rates by merely licensing or permitting a foreign corporation to engage in local business and acquire property within its limits."

See, also, Northwestern Mut. L. Ins. Co. v. Wisconsin, 247 U. S. 132, 139, 38 Sup. Ct. 444, 62 L. Ed. 1025.

[6] If the statute here considered does not always operate equally upon foreign as compared with domestic corporations, it does not necessarily follow that it denies to plaintiff the equal protection of the law or is confiscatory in character. In State v. Fulton, 98 Ohio St. 350,

356, 121 N. E. 697, it is said a foreign corporation does not in all instances pay the same tax as a domestic corporation. If under the statute domestic corporations are favored, the statute is not necessarily invalid, for no limitation upon the power of the state to exclude foreign corporations requires identical taxing in all cases of domestic and foreign corporations. Baltic Min. Co. v. Massachusetts, 231 U. S. 88, 34 Sup. Ct. 15, 58 L. Ed. 127. In Northwestern Mut. L. Ins. Co. v. Wisconsin, 247 U. S. 139, 38 Sup. Ct. 446, 62 L. Ed. 1025, it was held that—

"It is no denial of equal protection for a state to impose a different rate upon one of its own corporations than that imposed upon a foreign corporation, for the privilege of doing business within its borders. Kansas City, Memphis & Birmingham R. R. Co. v. Stiles, 242 U. S. 111, 118."

In the Dittey Case the precise question here raised was fully discussed in 203 Fed. 540–546, and the conclusion reached was approved by the Supreme Court. Ohio Tax Cases, 232 U. S. 589, 590, 34 Sup. Ct. 372, 58 L. Ed. 737. One of the plaintiff railway companies was so unproductive that, under prudent economical management (and the same situation arose in State Railroad Cases, 92 U. S. 575, 23 L. Ed. 663), it was operated at a loss. The Ohio cases arising out of the statute imposing a tax on the liquor traffic and involving an exercise of the police power, as well as that of taxation for revenue, were reviewed, in each of which the statute assailed was sustained, although the Ohio court recognized that many persons of small means would be driven out of the liquor business. A foreign corporation occupies a relation to the state different from that of the domestic corporation. It may withdraw from the state of its adoption wealth in the form of dividends and profits to the state of its origin. In entering another state, a corporation seeks to control a part of the business of that state in competition with the corporations created under its laws. The domestic corporation usually has within its taxing jurisdiction all or a large part of its personal and possibly real property subject to taxation. The foreign corporation may have and frequently has a large amount of its property in the state of its domicile and there subject to taxation, but exempt from taxation in the state into which it is admitted to do business. On account of the difference in the attitudes of the two classes of corporations a variance may be had in the rate of taxation.

[7] In the light of the conclusion reached in the Southern Gum Company, Dittey, and Ohio Tax Cases, it must be held that the statute under consideration is a general law, a part of a comprehensive system of corporate taxation, operating on all corporations of a given class throughout the state, and is not to be overthrown merely because in some instances it may produce hardship on weak corporations, or corporations whose organizers improvidently provided for an excessive authorized capital stock. Absolute equality and uniformity is impracticable in any known system of taxation, and is not required by the equal protection clause of the Constitution. An approximation to equality is all that is practicable. Inequalities that result, not from hostile discrimination, but occasionally and incidentally in the applica-

tion of a system that is not arbitrary in its classification, are not sufficient to defeat a law. See the Dittey Case (D. C.) 203 Fed. pp. 543, 544, and authorities there cited, and Maxwell v. Bugbee, 250 U. S. 525, 543, 40 Sup. Ct. 2, 63 L. Ed. 1124.

In the instant case the plaintiff's incorporators voluntarily elected to fix their authorized capital stock at 400,000 shares. They have disposed of only about 50,000 shares at the price of $7 per share, as fixed by the state securities department. If, when taxpaying time comes, its officers and stockholders find its authorized capital excessive, productive of a needless financial burden, and harmful to them in their competition with others engaged in like manufacturing (and there are some thus engaged), there is no apparent impediment obstructing their reduction of such capital. Prudent managers of foreign corporations doing business in Ohio will have no occasion to charge in good faith that the statute is confiscatory or denies their companies the equal protection of the laws.

The plaintiff's position is not unlike that of the White Company, whose status was determined in Chaney Bros. Co. v. Massachusetts. Plaintiff acquired real estate in Toledo, improved it, and at considerable cost adapted it to the manufacture of much-used commodities. When it was admitted to do business in Ohio, the statute in existence bore more heavily on domestic than on foreign corporations. By an amendment an increased rate was imposed on entities of the latter class. Plaintiff's real estate is employed in a business in which there is considerable competition in Ohio. The investment in enterprises of like character must be large. The sale or leasing of factories such as the plaintiff owns for the production of the same, or allied, or different products in a thriving city, such as Toledo is, is not infrequent. The record does not suggest that the plantiff will be by the franchise tax law subjected to the confiscation of its property, or to great or substantial loss, or that its property is not readily salable at a reasonable price to other persons in the same or other kinds of business. Plaintiff's investment is not of the permanent character of those made by railroad or telegraph companies, but may be removed from one place to another, and its equipment, when so transferred, put to a use like the present. It may be noted that in Underwood Typewriter Co. v. Chamberlain, 254 U. S. 114, 122, 41 Sup. Ct. 45, 65 L. Ed. 165, it was stated in plaintiff's brief, although not assigned as error or presented in argument, that the tax imposed on the plaintiff, a manufacturing corporation, was void under the Fourteenth Amendment because the company had made large permanent investments in Connecticut before the taxing statute was enacted. The objection, it was said, was clearly unsound.

[8] In response to the claim that the privileges and immunities of the plaintiff as a citizen are abridged by the statute in question, suffice it to say that the plaintiff is not a citizen, within the meaning of the constitutional provision which declares that the citizens of each state shall be entitled to the privileges and immunities of citizens in the several states. Paul v. Virginia, 8 Wall, 168, 19 L. Ed. 357; Western Union Tel. Co. v. Mayer, 28 Ohio St. 521. None of the constitutional ob-

jections urged are valid. On the contrary, if the tax here in question burdens the interstate commerce transacted by plaintiff, that fact is due, not to any inherent or constitutional defect in the law itself, but to a mistake or misunderstanding as to the nature and extent of plaintiff's business, for which the plaintiff is largely responsible.

Following the notice to plaintiff of the assessment of a tax of $20,000 against it, it wrote the tax commission and the state treasurer, complaining of the amount and discussing what it deemed the applicable law, neither of which letters were helpful as to a determination of the amount of business done within or without the state, excepting the rather indefinite statement in the letter to the treasurer that practically all of the property of the company is located in Ohio. The answer to both letters was that no mistake had been made as to the sum levied. Subsequently a representative of the plaintiff interviewed the chairman of the tax commission, and, as he now claims in his affidavit, related the facts as to plaintiff's interstate business as he then knew them, and approximately as outlined in the evidence of this case. The chairman states that, as he recalls, the matters detailed in the affidavit of plaintiff's vice president and in the amendment to the bill were not submitted, although the claim was asserted that a large part of plaintiff's business was interstate in character. His recollection is that the statements made were not inconsistent with those embodied in plaintiff's annual report heretofore mentioned, and that no demand was made for permission to correct or amend such return. The representations made by plaintiff's agent were manifestly not supported by the sanctity of an oath. The chairman, but not the tax commission as such, declined to reduce the tax charged.

The statement in plaintiff's verified filed report, that all of its business had been "handled from Ohio," suggests that some part of it reached beyond the state; but in such report it is twice averred that plaintiff has no property outside of Ohio, and in its sworn application for leave to do business in Ohio, filed November 8, it alleges the value of its property in the state to be $750,000, and "the proportion of the capital stock of the company represented by property owned and used and by business transacted in Ohio is practically all." Such proportion was apparently deemed so slight as to be unworthy of segregation. In view of the evidence before the tax commission and the uncertain character of the same, we are not prepared to say the commission was not warranted in making the $20,000 assessment or in adhering to it. The plaintiff submits an affidavit that of its total business, amounting to $250,594.58, the property sold within the state is represented by $70,602.30. It would seem that this court may not consider such affidavits to condemn the conclusion reached by the commission. Manufacturers' Light & Heat Co. v. Ott (D. C.) 215 Fed. 940, 950.

We feel, however, that a determination of the proportion of plaintiff's property owned and used and business done inside and outside of Ohio is a proper subject of inquiry, absolutely essential to the determination of the question whether any part of the tax is levied upon the proportion of its authorized stock, if any, represented by property own-

ed and used and business transacted beyond the state. The Ohio law (section 5517) requires a corporation desiring a review of any determination, finding, or order made by the tax commission to file an application therefor within 60 days from the date of the commission's certification of its action. Such commission may then, upon such application, make such correction in its determination, finding, or order as it may deem proper, and its decision in the matter is final. The legislation essential to the establishment of the amount of the tax is then concluded, and the judicial stage is then reached. Bacon v. Rutland R. R. Co., 232 U. S. 134, 34 Sup. Ct. 283, 58 L. Ed. 538. The plaintiff, without awaiting the lapse of sixty days, prematurely instituted the present suit.

The provisions of the Ohio statute differ in various respects, which need not be detailed, from those of the Virginia Constitution and act under consideration in Prentis v. Atlantic Coast Line, 211 U. S. 210, 29 Sup. Ct. 67, 53 L. Ed. 150; but the rule of comity there observed and the mode of procedure there adopted should, as far as practicable, control here. Whether the action of the plaintiff, after it was notified of the assessment made against it, rose to the dignity of a request or demand for a rehearing before the tax commission, and whether that body, if a request for a rehearing yet be made, will conclude that the request is not timely, or, out of a desire to be accurate and just, will grant a rehearing, regardless of the lapse of time, are questions for the commission to decide. In Palermo Land & Water Co. v. Railroad Commission (D. C.) 227 Fed. 708, the defendant in open court offered to entertain an application for a rehearing, although the usual time for applying therefor had expired. In the instant case the defendants have stipulated that the plaintiff's present status, during the pendency of this case and until its decision, shall be maintained, and that plaintiff shall not be subjected to any penalties, fines, or forfeitures by reason of any default on its part in the payment of the tax charged against it. Being thus amply protected, the court need not at this time trouble itself over the question of injunctive relief or render final decision. Pending an application for review before the tax commission and the disposition of the same, the present bill will be retained to await the result of such proceedings. When the conclusion reached is properly presented to the court, it will take such final action as it deems proper.

All of the costs of this proceeding will be taxed against the plaintiff, for the reason that, had it proceeded in an orderly and reasonably thorough manner, the occasion for the present suit would probably never have arisen.