[Civ. No. 9619.   First Appellate District, Division Two.—November 23, 1934.]

MT. TAMALPAIS & MUIR WOODS RAILWAY, Appellant, v. CHARLES G. JOHNSON, State Treasurer, etc., Respondent.

Thomas, Beedy, Presley & Paramore for Appellant.

U. S. Webb, Attorney-General, and H. H. Linney, Deputy Attorney-General, for Respondent.

NOURSE, P. J.—■ Plaintiff sued the state for taxes paid under protest for the taxable year 1930–1931, and the defendant had judgment. For many years prior to 1930 the plaintiff had operated a sight-seeing railroad carrying tourists to Mt. Tamalpais and to Muir Woods. On December 6, 1917, the railroad commission authorized plaintiff to discontinue its operations each year during the months of November, December, January and February because the winter rains made the tracks dangerous for passenger traffic. On February 28, 1930, an order was made continuing the suspension of service to March 15, 1930. On August 7, 1930, the railroad commission authorized the complete abandonment of the railroad. Thus, when a tax of $2,715.02 was levied on the first Monday in March, 1930, covering the gross income for the year 1929 the railroad was not in actual use although the company still possessed all its properties such as rights of way and rolling stock, and it had not then been permanently abandoned. And, because the railway company and the taxing authorities then treated these properties as "operative" no local or *ad valorem* tax was levied upon them for that taxing period. The trial court held for the state on the grounds that the tax was valid on the first Monday in March because the railroad at that time was only temporarily abandoned and was in the same state as it had been for four months of every year since 1917.

Plaintiff contends that it ceased to be an operative railroad on October 31, 1929, and that there is no provision in the Constitution or code for taxation of railroads deemed operative "in law" or otherwise than in actual operation. It argues that the fact that the directors were uncertain on March 3, 1930, whether or not operation was to be resumed is immaterial because the permanent nature of the suspension is shown by the fact that operation was not resumed. The actual character (temporary or permanent) of the railroad is declared to be the only basis for determining its taxable status, making the orders of the railroad commission of no consequence; and the final order of August 7, 1930, is relied on by plaintiff as proving the permanence of the abandonment.

The cause was tried before the court sitting without a jury and, in support of the judgment for the defendant, the

learned trial judge prepared and filed a written opinion which fully covers all the issues tried and which we adopt as the opinion of the court. It reads as follows:

"The agreed statement shows that on December 6, 1917, the Railroad Commission authorized the discontinuance of operation of plaintiff's railroad each year during the months of November, December, January and February until further order and that on February 28, 1930, an order was made continuing the suspension of service to March 15, 1930. On the first Monday in March of 1930, therefore, and at the time its Report was filed with the Board of Equalization, the plaintiff was under a temporary suspension only. As I view the case, the situation as of the first Monday in March is not only controlling but it is all that is material to a determination of this question. The tax was either valid or invalid as of that time, and if valid the plaintiff cannot prevail.

"Subd. (f) of Sec. 14 of Art. XIII of the Constitution provides that ' . . . The taxes herein provided for shall become a lien on the first Monday in March of each year. . . . The gross receipts and gross premiums herein mentioned shall be computed for the year ending the thirty-first day of December prior to the levy of such taxes and the value of any property mentioned herein shall be fixed as of the first Monday in March. . . . '

"Section 3668c Pol. Code provides the same with respect to the lien attaching as of the first Monday in March and furthermore it provides that 'Every tax herein provided for has the effect of a judgment against the company. . . . '

"Cooley on Taxation (4th ed.) Vol. 2 has this to say upon the subject of the time element:

" 'Sec. 546. *Time as of which liability determined.* The taxable status of persons and property relates to a certain day in each year. There must be some day of the year as of which the power to tax property at all, or the power to tax it to a certain person, is to be determined. . . . '

"At 27 Am. & Eng. Ency. of Law (2d ed.), p. 662, it is said:

" 'The taxable status of persons and property generally relates to a day certain in each year. When the law thus provides, no taxes can be legally assessed and levied for a particular year unless the conditions requisite to liability

exist on the day fixed; and no changes in ownership, fluctuations in value, nonresidence, removal or destruction of the property, or the like, occurring subsequent thereto, can be considered in making or reviewing an assessment. The very notion of an assessment involves the fixing of values as of a certain date, since there is no mode of making the valuation vary with the increased or diminished value during the current year, and if there were, such varying valuations would be destructive of established principles of uniformity.'

"In a lengthy footnote, cases in support of the text just quoted are cited from many states, including California (*San Gabriel etc.* v. *Witmer Bros. Co.,* 96 Cal. 623 [29 Pac. 500, 31 Pac. 588, 18 L. R. A. 465]; *San Francisco* v. *Pennie,* 93 Cal. 465 [29 Pac. 66]; *San Francisco & N. P. R. Co.* v. *State Board of Equalization,* 60 Cal. 12) and including *Shotwell* v. *Moore,* 129 U. S. 590 [9 Sup. Ct. 362, 32 L. Ed. 827], and *Dodge* v. *Nevada National Bank,* 109 Fed. 726.

"See *People ex rel. Murray* v. *St. Louis,* 291 Ill. 600 [126 N. E. 529].

"In the Dodge case, 109 Fed. 726, it is said at p. 731:

" 'The entire system of taxation in the state of California plainly contemplates the existence of property liable to be assessed for taxes, and that its assessment, at whatever date actually made, shall relate to some fixed period of time, and that the taxable status of the property is to be determined by its condition on that day. The constitution and codes clearly designate the time when the assessable character of property becomes fixed, to wit, "at 12 o'clock, meridian, on the first Monday in March", and the question here involved must be determined with reference to that date.'

"The plaintiff corporation determined *after* the first Monday in March, 1930, to permanently discontinue as an operating railroad. In the years elapsing between 1917 and 1929 during which interval it enjoyed, from the State, the privilege of suspending operations during the winter months when travel was light and tracks dangerous, no claim was made that it was nonoperative because of this suspension, or that it was 8/12ths operative and 4/12ths nonoperative. In 1930, then, when this normal suspension of four months was stretched (by the order of Feb. 28, 1930) to four months and a half, the plaintiff was no more a nonoperating railroad than it had been from November to February next

preceding. The order of Feb. 28, 1930, made a difference in degree only, not in the essential character of the road as an operating or a nonoperating utility. To put it another way: If from 1917 to 1929 it was an operating railroad despite the winter shutdowns each year, it remained an operating railroad during the first two weeks of March, 1930,—that fortnight's extension not changing its character.

"Logically I can see no escape from the principle stated in the cases and texts cited above. As said in the Dodge case: 'the taxable status of the property is to be determined by its condition on that day'. And the determination of the plaintiff corporation at a later time to discontinue operating cannot alter that status, as I see it, any more than the destruction, in August, of improvements which were upon real estate on the first Monday in March, can render illegal taxes theretofore levied upon such improvements, *by relation back*. As said at the outset, the tax is either valid or invalid on the first Monday in March. In California this taxable status is not left in doubt, it is crystallized, in effect, into a 'judgment' (3668c, Pol. Code).

"Plaintiff concedes, for the sake of the argument, the force of the Dodge case, and that the taxable character of the property is to be determined as of the first Monday in March of 1930 and then discusses the two limitations (first) actually engaged in public service and (second) 'operative' character of the property. The cases cited on that branch of the discussion do not help in solving the question. Certainly if plaintiff was not an operative railroad on the day in question it could not be taxed as such. I find myself back at the original question and am unable to escape the conclusion that, although shut down for the winter on the day in question in 1930 plaintiff had no more ceased to be an operating railroad on that day in 1930 than it had upon corresponding tax days in 1929 and so on back to 1917. In this connection it is frankly stated by plaintiff that 'Since the date of this suspension order in 1917 its lines had always been suspensively inoperative as of the first Monday in March of every year but it had always filed the report required by Section 3665c of the Political Code and paid the tax upon the theory that, upon a resumption of operations, notwithstanding the suspension, its properties acquired, by relation back, an operative status as of the first Monday in

March. On March 13th, 1930, the date of the report here involved, it stood with operations suspended, but in the same position as in previous years with respect to an anticipated resumption upon the expiration of the suspension period.'
I am unable to agree with counsel in what is said with respect to the doctrine of relation. The Dodge case, as I read it, does not warrant that position, and the texts cited do not. In tax matters it would seem that, however unfairly and harshly the law might operate in given instances, there must be a rigid and unyielding line drawn if there is to be anything like uniformity.

''The 'equities' in this case are all on the side of the plaintiff. Without turning a wheel in 1930 it stands now $2,715.02 out of pocket for taxes paid as an operating unit. Against that, the State (acting through the Railroad Commission) has relieved it of the performance of its duties as a utility and has permitted it to tear up its tracks and permanently suspend rather than continue serving the public at a loss. Neither consideration, however, may be legitimately taken into account in this case. The case presents a cold question of law and however strongly a court might be inclined to relieve from a difficult situation, the relief must be legal in its character. How, legally, any relief can be given in this case I cannot see.

''No case has been cited by either side presenting a comparable situation, and the problem must be dealt with upon the general principles discussed earlier in this memorandum. Feeling that, in contemplation of law, the plaintiff was an operative company on the first Monday in March of 1930, the tax was validly levied irrespective of the subsequent fate of the railroad. It follows that judgment should go for the State.''

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.