## JOHN A. FRITSCH, RESPONDENT, *v.* BOARD OF COMMISSIONERS OF SALT LAKE COUNTY ET AL., APPELLANTS.

COUNTIES—INDEBTEDNESS—CONSTITUTIONAL LIMITATION—REVENUE —WARRANTS—ESTOPPEL—BONA FIDE PURCHASERS.

1. Section 3 of article 14 of the constitution, declaring that "no debt in excess of the taxes for the current year shall be created by any county" unless a majority of the voters qualified to vote thereon shall have decided to create it, at an election for that purpose, *held* to mean that no debt shall be created by any county during the year, without such vote, which the revenue of the year will not pay.

2. The language of section 3, article 14, Const., that "no debt, in excess of the taxes of the current year, shall be created," cannot be held to mean that the county may expend the entire revenue of the year, and in addition thereto create indebtedness equal to the tax levy of the year. A debt cannot be incurred in one year, and floated over to the next, and paid out of its revenue, without a vote. The indebtedness of the year must be paid out of its revenues.

3. If official or other services are not paid for as they are rendered, or goods and chattels are not paid for on delivery, a "debt" is created, in the sense in which the term is used in the section mentioned, though there may be money in the treasury to pay it.

4. The language of the constitutional provision, "no debt in excess of the taxes for the current year shall be created" (article 14, § 3), means all debts which cannot be paid out of the revenues of the year. In determining when the limit is reached, liabilities imposed by the law should be taken into consideration, as well as those created by contract.

5. Not only the revenues arising from the tax levy of the current year, but those arising from licenses and other sources as well, must be paid upon the indebtedness arising during the year, whenever collected, so far as required; and, if an excess remains, it should become a part of the revenue of the following year.

6. With respect to the year 1896, the court *held* that the amount of the revenue of 1895 in the treasury on the first day of the former year not required to pay indebtedness which bonds had not been issued to pay, and the tax levy of 1896, and revenue from all other sources for which a liability to pay arose during the year, constituted the revenue, so far as it could be collected at any time with all reasonable diligence, to pay all the indebtedness of that year; the rule being that the revenue of the year so arising must alone be appropriated to the payment of the liabilities arising during the year.

7. The county will not be estopped to deny that any county warrant is beyond the debt limit, though the claim for which it was issued was duly audited, and the warrant was duly issued by the auditor and certified to be within the debt limit. All persons receive warrants which may be above the debt limit at their peril.

8. County warrants or county bonds issued without authority of law are not valid in the hands of persons receiving them, or to whom they may have been assigned. Such persons, in a legal sense, cannot be innocent holders.

9. The court *held* the answer insufficient, because it did not show whether all the revenue of 1896 had been exhausted.

10. The fact that more warrants had been issued than there was revenue to pay furnished no excuse for not paying as far as it would go.

11. If any portion of the taxes assessed for any year are collected after its expiration, they should be applied to the payment of any remaining indebtedness of that year, so far as they will go; and, if not so required, they will become a part of the revenue of the succeeding year, and so on.

12. If any portion of the revenue of any year in the treasury on the first of the next year is applied to the payment of the indebtedness of the latter, an equal amount of its revenue should be

applied to the payment of the indebtedness of the former year, if required.

13. Before reversing the case because the county treasurer was not a party, upon the request of the parties, and of the probability that the questions of law presented by the demurrer will arise for decision in the court below after amendments, upon a trial, the court considered and decided the questions arising upon the errors assigned.

(No. 790.    Decided March 6, 1897.)

Appeal from the Second District court, Salt Lake county.    Hon. A. N. Cherry, *Judge.*

Action by John A. Fritsch against the board of county commissioners of Salt Lake county and others.    From a judgment for plaintiff, defendants appeal.    *Reversed.*

*Waldemar Van Cott,* County Attorney, for appellants.

*J. H. Hurd, Robt. Harkness, Frank B. Stephens,* and *C. O. Whittemore,* for respondent.

No briefs filed.

ZANE, C. J.:

In his petition filed in the court below, the plaintiff asked for a writ of *mandamus* commanding the defendants to recognize and provide for the payment of 20 county warrants issued upon liabilities incurred in 1896. It was alleged that they were duly signed by the county auditor, and certified by him to be within the debt limit of that year, that they were duly delivered to him, and that he owned them.    The defendants filed an answer to the petition, to which the plaintiff interposed a demurrer, which the court sustained, and, the defendants having elected to stand on their answer, the court ordered the writ as prayed.    From this judgment the defendants ap-

pealed, and assigned the judgment of the court granting the writ, and the order sustaining the demurrer as error. Assuming the allegations of the petition to be true, the county treasurer should have paid the warrants upon presentation and demand, and, upon a refusal, he should have been made a party defendant to a petition for a writ of *mandamus* to compel payment. But the petition was not demurred to, and both parties desire us to consider the errors assigned. Therefore we will proceed to consider and decide the questions raised and discussed upon the demurrer to the answer, for the reason that after reversal and amendments of pleadings the same questions would arise upon trial.

The defendants rely upon the following statement of the revenue of the county, and its liabilities for the year 1896, as a defense to the action:

STATEMENT OF REVENUE OF 1896.

| | |
|---|---:|
| Cash from 1895 account | $40,244 52 |
| Cash from licenses, fees, fines, pauper account, poll tax, rent, and miscellaneous items | 51,541 12 |
| Tax for year 1896 | 130,066 17 |
| From the state, one-half salaries of attorney, assessor, and treasurer | 2,837 50 |
| Taxes of 1894 and 1895, collected in 1896 | 29,280 97 |
| Tax-sale redemptions paid into treasury in 1896 | 11,889 12 |
| Total revenue | $265,859 40 |

LIABILITIES.

| | |
|---|---:|
| Appropriations made during the year 1896 | $222,616 12 |
| Appropriations January 2, 1897, for salaries, etc., for liabilities of 1896 | 19,786 94 |
| Amount due jury and witness fees, as per auditor's books, to December 22, 1896 | 4,390 95 |
| Interest due on county warrants from January 1, 1891, to August 1, 1896 | 20,496 30 |
| Claims due the state of Utah and board of education, as audited by the auditor | 12,860 88 |

| | | |
|---|---|---|
| Appropriations from January 1, 1896, to June 5, 1896, for claims previous to January, 1896 | $21,859 | 23 |
| Total liabilities | $302,010 | 42 |
| Liabilities over revenue | $36,151 | 02 |

The following items of possible revenue, as shown by statement in answer, left out of above statement:

| | | |
|---|---|---|
| Amount due from former treasurer Leonard, presumably uncollected taxes | $25,559 | 60 |
| Amount due from former treasurer, Spencer, presumably for like taxes | 60,707 | 02 |
| Total | $86,266 | 62 |

The following items of possible indebtedness, as shown by statement in answer, left out of first statement above:

| | | |
|---|---|---|
| School-fund proportion of amounts due from Leonard and Spencer | $38,044 | 94 |
| Interest on $92,522.86, county warrants, incurred in 1896, due January 1, 1897 | 3,084 | 05 |
| Due on warrants issued in 1896 | 2,500 | 00 |
| Claims presented to board, but not acted on | 1,943 | 36 |
| Total | $45,572 | 35 |
| Possible revenue over possible liabilities | $40,692 | 27 |

The question is presented for our consideration and decision, do plaintiff's warrants constitute a debt in excess of the taxes of Salt Lake county for the year 1896, and would their payment be a violation of section 3 of article 14 of the constitution of this state, as follows: "No debt in excess of the taxes for the current year shall be created by any county   *   *   *   in this state; unless the proposition to create such debt shall have been submitted to a vote of such qualified electors as shall have paid a property tax therein in the year preceding such

election, and a majority of those voting thereon shall
have voted in favor of incurring such debt." This sec-
tion declares that no debt in excess of the taxes of the
current year shall be incurred without a vote of the
electors. The intention to limit the expenditures to the
taxes appears to be clearly expressed by its language.
We must infer that the members of the convention who
framed the section, and the electors who adopted it, in-
tended what its language, grammatically arranged, in
its ordinary acceptation, expressed. For such an infer-
ence, in our opinion, does not involve any inconsistency,
lack of sound judgment, or absurdity. Plaintiff's counsel
insist, however, that the liabilities which the revenue
was sufficient to pay during the year did not, in a legal
sense, constitute indebtedness, and that, therefore, the
expression, "no debt in excess of the taxes of the current
year shall be created," means that a debt shall not be
created in excess of the revenue of the year, and an
amount equal to the tax levy of the year, or, in other
words, that the liabilities of the year may equal the
entire revenue of the year, including the tax levy, and in
addition, a sum equal to the tax levy; that the county
may expend the entire revenue, and in addition create
indebtedness equal to the tax levy. The position, as
applied to the case in hand, is, if the revenue of 1896,
including the tax of $130,066, amounted to $265,859, the
constitutional provision in question permitted the liabil-
ities of the county to equal that amount, and $130,066 in
addition; that the county could float a debt, without a
vote of the electors, over to 1897, of $130,066, after having
expended the entire revenue of 1896. The language of
the provision does not warrant such an interpretation.
Admitting there is room for construction, the one placed
upon the provision by the plaintiff appears to be unrea-

sonable, in view of its language, and the experiences and conditions in view of which it was adopted. The expression, "no debt in excess of the taxes of the current year," is used, not "no debt in excess of [a debt equal to] the taxes for the current year." It appears to be clear that a debt exceeds the taxes when it remains after they have been expended, and, if taxes are construed to mean the entire revenue, that the debt is in excess of it, if it remains after it has been expended. But we cannot concede that liabilities incurred during the year do not amount to indebtedness, so long as they do not exceed the revenue for the year, in the sense in which the term is used in the provision under consideration. The salaries of officers and employés of the county, if not paid as the official or other service is rendered, become county indebtedness, and the price of lumber or other material purchased, if not paid for on delivery, becomes indebtedness. If the county were sued for such indebtedness, it would be no defense for the county to say, "I have sufficient revenue in my treasury to pay you," or that "I have levied a sufficient tax to pay it." *City of Springfield* v. *Edwards,* 84 Ill. 626, is cited in support of the proposition contended for by the plaintiff. The court held in that case that, though the corporate indebtedness may have reached the debt limit established, the corporation may give an order to an individual for material or other consideration furnished, for enough of the taxes when collected to pay him, provided no liability against the county is created. The court said: "The principle, as we understand it, is, there is in such case no debt, because one thing is simply given and accepted for another." This decision declares, in effect, that a debt within the meaning of the constitutional limitation is created if the corporation is bound to pay, though the tax

levy for the year, or revenue in the treasury, may be sufficient to pay it. Such appears to be the rule adhered to by the supreme court of Illinois.

In *City of Valparaiso* v. *Gardner*, 97 Ind. 1, the supreme court of that state held the limitation to indebtedness imposed upon political corporations by the constitution did not apply to payments for water to be furnished, provided the contract price could be paid from the current revenues as the water should be furnished, without increasing the corporate indebtedness beyond the constitutional limit, or encroaching upon the funds set apart for other purposes. In nearly all the cases to which we have been referred, the term "indebtedness" was considered as found in constitutional provisions laying down a general rule limiting all classes of indebtedness at all times, while the provisions under consideration forbid a debt in excess of the taxes for the current year unless it is authorized by a vote of the electors. The general limitation in the Utah constitution is found in section 4 of the same article, and establishes 2 per cent. of the assessed value of taxable property as the limit.

Dill. Mun. Corp. (4th Ed.) § 136a, states the rule in the states named as follows: "Under the constitutional provisions of Iowa, Illinois, Indiana, and Pennsylvania, referred to, it is held that a corporation may make a contract (at least for necessaries), covering a series of years, upon which an obligation to pay may arise from year to year as the thing contracted for is furnished; and in such case the whole amount which may ultimately become due does not constitute a debt, within the constitutional prohibition. But in order to ascertain whether the corporation, by such contract, is transgressing the limit, regard is had only to the amount which may fall due within a certain year or other period; and if the rev-

enues for that year or other period are sufficient, over and above the payment of the other expenses, to pay such amount, there is no debt incurred, within the constitutional prohibition." If all the liabilities of the county are paid as they arise, no indebtedness is created, but, if they are not, a debt exists; and if the revenue of the year is applied to the payment of county expenses and liabilities incurred or arising during the year, and is sufficient to pay them, the indebtedness can be no greater at the end of the year than at the beginning; but if the revenues are not so applied, and the indebtedness not so paid, the debt will be greater; and, if the debt was at the limit at the beginning, it will exceed it at the end, and the constitution will be violated, according to the rule expressed in Dillon.

The plaintiff also relies upon the case of *Penton* v. *Blair*, 11 Utah 78. This decision was made under the limitations imposed by the organic act and the laws of the territory. Section 4 of an act of congress in force July 30, 1886, declared that no county should ever become indebted in any manner, or for any purpose, to an amount, in the aggregate, including existing indebtedness, exceeding 4 per cent of the value of the taxable property within such county, to be ascertained by the last assessment for territorial and county taxes previous to incurring the indebtedness. In this way the provision fixed the amount of the indebtedness that the county might incur. And, subject to this provision, the territorial legislature provided "that no county should incur any indebtedness or liability in any manner, or for any purpose, to an amount exceeding in any year the total amount of its income and revenue for the two fiscal years immediately preceding the incurring of such indebtedness." 1 Comp. Laws Utah, p. 293, § 173.

This section also fixed the amount, by a similar method, to which the county might become indebted. In its opinion the court said: "But we are clearly of the opinion that by no means of juggling with the figures and the financial statement of the county can the debt limit be increased at any time, in any year, exceeding the entire revenue for the two years immediately preceding the time such debt is created." The language used in the organic act of the territory, and its arrangement, differs widely from the language and its arrangement in the third section of the constitution. According to the latter, if we assume that the county may become indebted during the year, while its revenue exceeds its liabilities, then its indebtedness must not exceed its revenue. Or if, according to a legal fiction, we assume something as true which is false, but not impossible, and say that the county cannot be indebted when its revenue has not been exhausted, then the constitutional provision declares that "no debt in excess of the revenue or taxes shall be created,"—no debt whatever. In either case the indebtedness of the current year cannot exceed the revenue of the year, while the act of congress referred to fixes the "amount" to which, in the "aggregate," the county may become indebted by reference to the two preceding years, and in the same way the territorial enactment fixed the amount. It appears from the answer that the territory on the 31st day of December, 1895, had a floating debt outstanding, evidenced by interest-bearing warrants, the principal of which amounted to $439,205.73. It is common knowledge that many of the persons who secured such warrants for services performed, or other consideration rendered or given, were compelled to stand enormous shaves in order to get the cash. When it becomes necessary to hawk the warrants

of the county about the town in order to realize upon them, persons to whom they are issued get less than they contract for, and the county loses its financial standing, and is often required to pay more than it would if prompt payment could be relied upon. Besides, a bonded indebtedness can always be obtained at a lower rate of interest than a more temporary one, evidenced by a great number of discredited warrants. To remedy the above abuses and evils that had grown up under the territorial system, the section of the constitution under consideration was adopted, prohibiting any indebtedness which cannot be paid by the revenue of the current year. Such is our interpretation of the provision in question, and it is supported by the weight of authority. *Smith* v. *Broderick*, 107 Cal. 644; *Book* v. *Earl*, 87 Mo. 246; *Appeal of City of Erie*, 91 Pa. St. 398.

It is also urged that only indebtedness arising from voluntary contracts should be included, in determining when the limit is reached. That indebtedness for salaries and liabilities for the negligence of the officers or agents of the county for which it may be liable should not be included. The language of the constitutional provision is, "No debt in excess of the taxes for the current year shall be created." That language includes all debts where the proposition to create has not been submitted to the electors. The number of officers of the county, and their salaries, are largely within the discretion of the county board. The commissioners, by the exercise of reasonable foresight and discretion, can avoid any lack of revenue for the payment of salaries or fees, or the payment of damages in consequence of torts, by taking such salaries and fees into consideration in estimating the amount of the tax levy, and by making a reasonable estimate for extraordinary demands for torts.

They have the means of ascertaining, when making their estimate and assessment of taxes for the year, the precise expenditures of the preceding years, and, with the exercise of reasonable foresight, caution, and care, they can make an assessment sufficient to meet all just demands for the year.

The case of *Rollins* v. *Lake Co.*, 34 Fed. 845, is relied upon. This case afterwards came before the supreme court of the United States upon a writ of error, and by that court the decision relied upon was reversed. In that case a large number of warrants constituted the cause of action, and the contention was as to a constitutional provision of the state fixing the debt limit of county indebtedness, and as to what indebtedness should be included in determining whether it had been reached. In its decision the supreme court said: "Neither can we assent to the position of the court below, that there is, as to this case, a difference between indebtedness incurred by contracts of the county and that form of debt denominated compulsory obligations. The compulsion was imposed by the legislature of the state, even if it can be said correctly that the compulsion was to incur debt; and the legislature could no more impose it than the county could voluntarily assume it, as against the disability of a constitutional prohibition. Nor does the fact that the constitution provided for certain county ·fficers, and authorized the legislature to fix their compensation and that of other officials, affect the question. There is no necessary inability to give both of the provisions their exact and literal fulfillment." *Lake Co.* v. *Rollins*, 130 U. S. 662. We are of the opinion that the limitation embraced in the third section of the constitution quoted includes debts incurred by operation of law as well as those arising from express contract.

The defendants insist that the term "tax" used in the constitutional limitation under consideration means simply the revenue arising from the tax levy; that it does not include revenue arising from licenses and other sources. Licenses to keep saloons or dramshops are issued under the police power, while licenses to conduct some other classes of business do not need police regulation. Such licensing is used simply as a means of obtaining revenue. But, whether granted under the police power or the taxing power, the sums paid for them are a source of revenue, and, in effect, constitute a tax on the particular business. Again, it appears from the answer that the revenues of the county for the year 1896, from sources other than the tax levy, including $40,-244.64, in the treasury on January 1st of that year, amounted to $91,785.64. We cannot assume that the authors of the constitution intended that this large sum should remain in the treasury from year to year, and that the revenue from the same source should continue likewise to accumulate. We cannot impute to the authors of the constitution such an unreasonable intent. We hold that the county was authorized to appropriate the revenue from the tax levy, and that from other sources as well, to the payment of the legitimate liabilities of the year.

The plaintiff also claims that the law will not permit the defendants to deny the legality of his warrants, because they were issued by the county auditor, and certified by him to be within the debt limit. The authority and duties of the auditor were defined by public law, and the debt limit was fixed by the constitution. Persons dealing with the county, or receiving its warrants, must be presumed to know the law, and by inquiry they can ascertain the amount of the liabilities incurred and

expenditures made. County warrants or county bonds issued without authority of law are not valid in the hands of the person to whom issued, or his assignee. Persons receiving them cannot, in a legal sense, be innocent holders. All persons receive them at their peril. *Mayor* v. *Ray*, 19 Wall. 468; *Clark* v. *City of Des Moines*, 19 Iowa 200.

The plaintiff's claim against the county is evidenced by warrants, and they are valid as against the revenue of 1896. We are unable to determine from the facts stated in the answer whether all of the revenue of 1896 has been applied to the payment of the liabilities of that year. The fact that more warrants were issued than there was revenue to pay furnishes no excuse for not paying as far as it will go. Payment should be made to the limit, and the limit is the revenue of that year. And, if revenue shall arise from the collection of taxes levied in 1896, it shall be applied to the payment of that year's indebtedness, as far as it will go; and, if any of such revenue remains after all the indebtedness of that year shall have been paid, it will become 1897 revenue. And, if any of the revenue of 1896 has or shall be paid on the indebtedness incurred in 1897, an equal amount of its revenue, if required, should be applied to the indebtedness of the former year, and so from year to year. For the reason that the answer does not show that all the revenue of 1896 has been applied to the payment of indebtedness of that year, we are of the opinion that the answer would have been demurrable, had the suit been brought against the treasurer. We reverse the judgment of the court below, granting the writ, because the plaintiff's complaint does not state a cause of action against the defendants. The cause is remanded, with directions to that court to permit the county treasurer

to be made a party defendant, and to allow such amendments to the pleadings as will enable the case to be tried upon its merits.

Bartch, J., and Hiles, District Judge, concur.