HOLEPROOF HOSIERY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7535. Promulgated April 13, 1928.

*W. L. Harrison*, *C. P. A.*, and *J. B. Grice*, *C. P. A.*, for the petitioner.

*T. M. Wilkins, Esq.*, for the respondent.

548

OPINION.

MURDOCK: The petitioner contends that it sustained a loss of $1,000 during the taxable year in connection with its stock in the Milwaukee, Chicago & Michigan City Line. Satisfactory evidence that this stock was worthless at the end of 1921, has not been offered. An

alleged loss of this kind must be supported by facts which show that it was in fact sustained and is not established by the mere showing that the petitioner heard a rumor that the company was in financial straits.

The petitioner claims the right to deduct the amount of $1,760 under section 234 (a) (3) of the Revenue Act of 1921, as taxes paid or accrued within the taxable year. The amount was paid to the Secretary of State of the State of Wisconsin in accordance with the law of that State, as set out in our findings of fact, so that the petitioner's authorized capital stock might be increased from $2,000,000 to $3,750,000. The Commissioner disallowed this deduction on the ground that it was a fee and not a tax.

In the statute of the State of Wisconsin the amount to be paid to the secretary of state for the increase in the authorized capital stock of this corporation is called a fee, but we do not think that the decision of this case should depend upon this fact. The Supreme Court of the State of Wisconsin has held that certain charges called fees in its statutes were nevertheless taxes. See *State* v. *Chicago & N. W. Ry. Co.*, 132 Wis. 340; 112 N. W. 515. A fee exacted from a corporation may be a license or a tax, or both. *Airway Electric Appliance Corporation* v. *Archer*, 279 Fed. 878. Cook on Corporations, 8th ed., vol. 3, sec. 561, gives eleven different methods of taxing corporate interests, including—

9th, Incorporation fees and a tax on any increase of the capital stock.

The terms "fees," "licenses," and "taxes" have sometimes been employed as convertible terms, though they are not precisely synonymous. See *Parish of East Feliciana* v. *Levy*, 40 La. Ann. 332; 4 So. 309. In Words and Phrases, first series, vol. 3, p. 2715, under "Fees" the following appears:

The meaning of the word "fees" is the recompense allowed by law to officers for their labor and trouble (2 Bac. Abr. 463) ; so that where there is no labor or trouble, no necessary services rendered or offered to be rendered, no fees can be allowed. *City of Mobile* v. *Southerland*, 47 Ala. 511, 517.

Thus strictly speaking, the word "fees" signifies compensation for particular acts or services rendered by proper officers in the line of their duties to be paid by the persons obtaining the benefit of the services or at whose instance they were performed. See *State ex rel. Board of Commissioners of Hamilton Co.* v. *Carey* (Ind.) 84 N. E. 761, 762.

Various circumstances may lead to the conclusion that a certain charge made by a State is a tax. For example, the purpose for which the charge was made may be determinative. *Ward* v. *Maryland*, 12 Wall. 418; *Glasgow* v. *Rowse*, 43 Mo. 479; and *Airway Electric Appliance Corporation* v. *Archer*, *supra*. See also *Harvey*

v. *Commonwealth of Virginia*, 20 Fed. 411. The weight of authority holds that where the charge is made primarily for the purpose of revenue, it is a tax. A license is issued under the police power, but the exaction of a license fee with a view to revenue would be the exercise of the power of taxation. See *State* v. *Bengsch*, 170 Mo. 81; 70 S. W. 710.

In *City of St. Louis* v. *Spiegel*, 75 Mo. 145, the court said:

In this case it is apparent at first blush that the license fee is imposed for the purpose of revenue. That such fee is also imposed for the purpose of regulation does not deprive it of the salient characteristics of a tax.

Many of the so-called license taxes are assessed and collected annually, but there are occasional taxes also which are, nevertheless, taxes, and in deciding whether or not an occasional charge is a tax, we see no reason why the same principles may not govern as are controlling when the same question arises as to annual charges. In *Harvey* v. *Commonwealth of Virginia, supra*, there was involved an annual charge for a license and the court said, in part:

\* \* \* It is offensive, if not insulting, to the common sense of every candid citizen to pretend that the charge which the state may see fit to impose on merchants for the privilege of carrying on their business is anything else than the commonplace thing which practical men call a tax. The right of residence, of holding property, of conducting a business, may be a natural right, but the enjoyment of it under the protection of law is a privilege granted by the state, and therefore, for short, I have called it a privilege. Nor is there any essential difference between a tax *per capita*, levied for the privilege of residence, a tax *ad valorem*, levied for the privilege of holding property, and a license tax, levied for the privilege of conducting a particular calling. \* \* \*

In the case of *Airway Electric Appliance Corporation* v. *Archer, supra*, the court said, in connection with a somewhat similar charge made by the State of Ohio:

A tax may be laid for the double purpose of regulation and revenue. *Adler* v. *Whitbeck*, 44 Ohio St. 539, 572, 9 N. E. 672; *Fritsch* v. *Board of Commissioners of Salt Lake City*, 15 Utah, 83, 95, 47 Pac. 1026; *Parish of E. Feliciana* v. *Levy*, 40 La. Ann. 332, 4 South. 309. It may also be exacted for the privilege of exercising corporate franchises in the state and for general revenue (*State* v. *Ferris*, 53 Ohio St. 314, 329, 41 N. E. 579, 30 L. R. A. 218; *Ashley* v. *Ryan*, 49 Ohio St. 504, 525, 31 N. E. 721; *Gundling* v. *Chicago*, 177 U. S. 183, 189, 20 Sup. Ct. 633, 44 L. Ed. 725; \* \* \*

The term "fee" and "tax" were, in the legislative mind, convertible and equivalents. It is immaterial whether the sum charged is characterized as a fee, a tax, or an assessment, if on the whole it is clear that it is a tax. *Ashley* v. *Ryan*, 49 Ohio St. 525, 31 N. E. 721. In view of the provisions of section 181a, R. S. (now section 270, G. C.), that all money paid into the state treasury, the disposition of which is not otherwise provided by law, shall be credited by the auditor of state to the general revenue fund, it was held, in *Ashley* v. *Ryan*, 49 Ohio St. 526, 31 N. E. 721, that it is not necessary that the object of a given statute should be stated to be the imposition of a tax for revenue purposes in order to constitute it a statute of that character. The

tax or fee charged against a foreign corporation under the statute here considered is expressly required to be paid to the state treasurer (sections 5503, 5504), and section 5491 further provides that all taxes received by the state treasurer under the provisions of the Tax Commission Act shall be credited to the general revenue fund. But any exaction which is made a means of supplying money for the public treasury to defray the expenses of government, and any sum demanded as a franchise fee or excise tax, which goes into the state treasury and constitutes a part of its general fund, is a tax (*Mays* v. *Cincinnati*, 1 Ohio St. 268, 273, 274), and the law providing for the same is a revenue law (*Peyton* v. *Bliss*, Fed. Cas. No. 11,055).

We have already said in interpreting section 234 (a)(3) of the Revenue Act of 1918, which is similar to the same section of the Revenue Act of 1921, here involved, that we think Congress used the word "taxes" in this subdivision in a broad sense. *Caldwell Milling Co.*, 3 B. T. A. 1232. Taxes are deductible without regard to their relation to capital or income transactions. *United States* v. *Woodward*, 256 U. S. 632. In the case just cited, the court in holding that a Federal estate tax might be deducted under section 214 (a)(3) of the Revenue Act of 1918, said that if the correct construction should be a matter of doubt, it would follow the rule laid down in *Gould* v. *Gould*, 245 U. S. 151, and construe the Act most strongly against the Government and in favor of the citizen.

Each party might have presented additional evidence which would have given a better picture of the case than we now have. The respondent offered no evidence but relied upon the wording of the Wisconsin statute. However, the evidence which is before us indicates that the exaction from the petitioner was in substantial excess of any special benefits accruing to it; that it bore little, if any, relation to the cost of any service rendered by the State, or to reasonable compensation for any trouble or expense on the part of the State on account of the increase in the petitioner's authorized capital stock; that the receipts of the office of the secretary of state from this and similar charges greatly exceeded the portion of the expenses of administration attributable to the performance of any service by the State in connection with the charges; that the receipts were used for general State purposes and considerable revenue was derived in this way; and, in short, that there was a taking under the guise of taxation. See *Norwood* v. *Baker*, 172 U. S. 269. Under such circumstances we hold that the amount paid was a tax within the meaning of section 234 (a) (3) of the Revenue Act of 1921, and deductible thereunder.

The petitioner contends that the amount which it paid as attorneys' fees in order to obtain authority to increase its capital stock was an ordinary and necessary expense of the taxable year in carrying on its business. The Commissioner contends that the payment of this amount was a capital expenditure.

Those expenses which are ordinary and necessary in carrying on a business may be deducted from annual income when paid or incurred. Expenditures which are made for the acquisition of capital assets represent the cost of the asset and, if the assets are exhausting, deductions for exhaustion make capital whole in such cases before income is taxed. For example, repairs to a machine due to its use in a business are ordinary and necessary expenses of carrying on that business, whereas the original cost of an expensive machine having a life of several years is not an ordinary expense of carrying on that business. It is not chargeable to the year's business, but should be and may be deducted by way of exhaustion from the income of the years during which it is used. However, all expenditures need not fall into one or the other of these two classes. Thus, when a payment is made for something intangible with an indefinite life, the expenditure does not seem to fall within either class.

The expenditure for attorneys' fees in this case may be such an expenditure. It can be argued, and not without merit, that no capital asset is acquired when attorneys' fees are paid in connection with an increase in capitalization, but it does not follow that the payments are ordinary and necessary expenses of the year when made. It may be that the scheme of the taxing statute fails to provide for their reflection in the computation of the petitioner's tax, but in any event they are not ordinary expenses in carrying on the business during the year 1921, within the meaning of section 234 (a) (1) of the Revenue Act of 1921. *F. Tinker & Sons Co.*, 1 B. T. A. 799, 803; *First National Bank of St. Louis*, 3 B. T. A. 807; *Emerson Electric Manufacturing Co.*, 3 B. T. A. 932.

The petitioner claimed a deduction of $13,060 as rental for the year 1921 on 16 machines for knitting full-fashioned hosiery. Section 234 (a) (1) is the section of the Act governing the question of the deductibility of rents and it provides for a deduction " including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity."

The evidence in this case indicates that at the end of the year 1921 the petitioner had a substantial equity in these machines. We do not know the life of the machines, but we do know that they were still in use five years after the taxable year in question. We do not know at what amount the machines could be rented on the open market but we know that the total amounts to be paid under the lease agreements before the title to the machines was to pass to the petitioner exceeded but slightly the stated value of the machines, and it is inconceivable that the petitioner was not acquiring something of value, that is, a certain equity in the machines, with each

payment made in accordance with the agreement. The courts of Pennsylvania have recognized the existence of such an equity under leases similar to these. *Schmidt* v. *Bader*, 284 Pa. 41; 130 Atl. 259; *Packard Motor Car Co.* v. *Mazer*, 77 Pa. Super. Ct. 348; *Edward's Appeal*, 105 Pa. 103. The statute does not allow the deduction claimed.

The Commissioner was in error when he increased the petitioner's taxable income by $12,924.78. The petitioner had deducted this amount from its inventory as a 2 per cent discount received by it in the purchase of the materials inventoried. It thus arrived at the cost to it of these materials. This method has been used consistently by the petitioner. In 1920 no discount was actually subtracted from the inventories because of the fact that market at that time happened to be lower than cost and was used in the inventory. We had a somewhat similar situation in the case of *Higginbotham-Bailey-Logan Co.*, 8 B. T. A. 566. We there decided that such a discount could be deducted. This case does not require a different conclusion.

Reviewed by the Board.

> *Judgment will be entered in accordance with the foregoing opinion on notice of 20 days, under Rule 50.*