*1297 OPINION.
Disney:
There are left for our consideration only two questions: (1) Whether the petitioner is entitled to dividends paid credit, and (2) whether it is entitled to deduction of attorneys’ fees as ordinary and necessary expenses. Other issues have been eliminated and will be reflected in decision under Rule 50.
1. There is little, if any, dispute about the facts on the question as to whether the petitioner is entitled to dividends paid credit under section 27 of the Revenue Act of 1936. In sum, the pertinent facts may be stated as follows: Being in arrears for several years upon payment of dividends upon its $7 cumulative preferred stock, the arrears amounting to $45.50 per share in the taxable year, and having earned in the taxable year substantial amounts which were, however, desired for use in operating and expanding the business, the petitioner, with the primary object of relieving itself from the burden of the arrears in dividends on the preferred stock, entered into a recapitalization. The effect of the recapitalization was that the holders of the preferred stock surrendered same with the understanding that they were also surrendering their rights to accumulated undeclared and unpaid dividends, all in consideration of the receipt of 1.4 shares of a new issue of new preferred stock (which differed from the old in some respects and incident rights), plus $5.50 per share in cash, for each share of the old preferred. Out of 5,632 shares of preferred stock so held, all stockholders, except the holders of 79 shares, participated, surrendered their old stock, and received the new stock; that is, the holders of 5,553 old shares received 7,774.2 shares of the new preferred stock, and $5.50 per share in cash for each of the 5,553 shares. The holders of 79 shares refused to take stock and received $45.50 cash per share, and contention as to them has been abandoned by the respondent. The old preferred stock was of no par value, but was by amendment of certificate of incorporation converted into class A preferred stock of $100 par value (which will, however, be hereinafter referred to as the old stock). The petitioner contends that when the holders of the old preferred stock (as changed) received 1.4 shares and $5.50 cash for each of the old shares, they in effect received a dividend of $40 for the .4 share received and $5.50 in cash, or a total dividend of $45.50, in the same way as did the nonparticipating holders of the 79 shares, amounting to $222,120; that such constituted a “dividend paid” within the language of section[1] 27 (a) of the Revenue Act of 1936,[1] and the petitioner is therefore entitled to dividends paid credit in the amount of $222,120. The earnings of the taxable year were more than that amount. Although *1298 the respondent contends that, considering the fact of deficits in earlier years and their absorption by the application of capital thereto, there were in fact and in effect not sufficient earnings against which to charge the alleged dividend in the taxable year, it is not necessary, in view of the conclusion to which we have come, to consider that phase of the matter.
The petitioner must show that under section 27 of the Revenue Act of 1936 there was a dividend and that it was paid, and, under subsection (h) of the statute,[2] that it was a “taxable dividend.” There was in fact no payment in this case, but the petitioner contends that the effect is the same as if a dividend had been paid. Although attention was upon brief paid to the question of stock dividend, that question is not before us, since at trial it was stated by petitioner’s counsel that there was no contention that a stock dividend was paid, and evidence was not adduced to show the fair market value of such stock dividend. We therefore confine ourselves to the question as to whether the transaction which took place should be given the effect of a cash dividend, taxable and paid. The petitioner’s idea is, in effect, that, since the primary object of the recapitalization was to eliminate the arrears in unpaid accumulated dividends upon the preferred stock, and since the petitioner had the current earnings with which to pay them, the stockholders simply surrendered their rights to $45.50 per share dividends in consideration of the .4 per share of new stock which was a capitalization of $40 of earnings and $5.50 cash; and that therefore they in effect received a dividend of $45.50. The respondent allowed the dividends paid credit in the amount of $5.50 per share, but disallowed it as to the $40. He contends in substance that the transaction was what it was called in, the plan, a recapitalization, and therefore a reorganization under the definition laid down in section 112 (g) (1) (D): that sections 112 (b) (2) and (3) and (c) (1) of the Revenue Act of 1936[3] apply; that under the provisions thereof there was no *1299 recognition of gain or loss upon the exchange of stock for stock in the same corporation, except upon the cash received; that therefore under section 27 (h) of the Revenue Act of 1936 the distribution was not a “taxable dividend”; and that therefore dividends paid credit can not be allowed.
That the transaction was a recapitalization can not be denied in view of the repeated use of that expression throughout the documents by which the plan is evidenced. Thus, in the letter to the stockholders proposing the plan it is stated that the board of directors has given consideration to the desirability of presenting to the stockholders “a plan of recapitalization of the Corporation * * and in effect the same expression is again more than once used. Likewise it can hardly be denied and in fact is not denied that there was an “exchange”, for in the same letter and in the same paragraph just referred to the “plan of recapitalization of the Corporation” was stated as: The preferred stock “may be exchanged for a new Cumulative Prior Preferred Stock, 5% Convertible Series and an adjustment of the unpaid dividends on the present Convertible Preferred Stock may be effected.” The expression “exchange” is thereafter repeatedly used. It thus appears to be incontrovertible that at least within the language of section 112 (b) (2) and (3) “preferred stock in a corporation is exchanged * * * for preferred stock in the same corporation”, and that under section 112 (c) (1), since the exchange was not solely for stock, $5.50 in cash being received upon each share, gain or loss was limited to recognition of the cash received. The respondent further relies upon the language of section 115 (h) of the Revenue Act of 1936,[4] pointing out that a distribution *1300 by a corporation “ox its stock or securities * * * shall not be considered a distribution of earnings or profits * * * if no gain to such distributee from the receipt of such stock or securities was recognized by law, * * that therefore section 112 (b) (2) and (3), having provided that there shall be no such recognition of gain to the distributee, the distribution can not be considered one from earnings or profits and therefore is not a dividend within the definition of section 115 (a) providing that a dividend “means any distribution made by a corporation * * * out of its earnings or profits accumulated after February 28, 1913, or ⅜ * * out of earnings or profits of the taxable year * *
To all of this the petitioner’s position and answer is in sum that the prime purpose of the whole plan was the elimination of the liability of the corporation for the accumulated unpaid dividends on the preferred stock, and that, such primly intent having been accomplished when the stockholders received four-tenths of a share of the new stock and $5.50 in cash instead of their former right to unpaid accumulated dividends, and the former stock having been set up of a value of $100 per share, anid that amount of earnings transferred to capital, it is as though they received $45.50 in consideration of the surrender of the right to receive the accumulated dividends in that amount, with the same effect as if they had in fact received such amount in cash and had then purchased the four-tenths of the shares of the stock therewith.
It is true that the primary purpose of the recapitalization was to eliminate the liability for unpaid dividends upon the preferred stock, in order to apply the funds on hand to business purposes. The initial letter to the stockholders proposing the change says:
The need for a plan of readjustment of the present capitalization arises principally as a result of the substantial amount of unpaid accumulated dividends on the outstanding Convertible Preferred Stock which, as appears from the balance sheet dated December 31, 1936, previously sent to stockholders, should not be paid in cash at this time. Furthermore, it is also desirable that the Corporation retain its present working capital to finance the purchase of additional machinery and equipment required to handle the substantial increase in the volume of business which is taking place.
In the same instrument we find the following language:
The important feature of the plan is the offer of exchange set forth in Section III of the plan, whereby, in the event that the plan is declared effective by the Board of Directors upon the terms and conditions stated in the plan, the holders of the shares of Convertible Preferred Stock now outstanding will be offered, in exchange therefor, shares of the new Cumulative Prior Preferred Stock, 5% Convertible Series, and $5.50 in cash, on the basis stated in the plan and summarized above.
By accepting the offer and making the exchange, holders of the existing Cumulative Preferred Stock will thereby release their claim to all dividends accrued and in arrears on the outstanding Cumulative Preferred Stock.
*1301 Nevertheless, after much consideration of all the facts, the primary intent of the plan, and the statutes, we do not think the result desired by the petitioner can be said to follow. In the first place, it can not accurately be said that the four-tenths share of new preferred stock was issued in consideration of the surrender of the right to the accumulated dividends. The record made by the parties at the time shows that the consideration for the stock and cash received was not divided, but was both the surrender of the old stock and the surrender of the right to accumulated dividends. Thus the initial letter to the stockholders of April 27, 1937, to which reference is made above, provides “a plan of recapitalization * * * whereby the present Convertible Preferred Stock * * * may be exchanged for a new Cumulative Prior Preferred Stock * * * and an adjustment of the unpaid dividends on the present Convertible Preferred Stock may be effected.” Later the same instrument recites:
Briefly stated, the offer provides for an exchange on the basis of 1.4 shares of the new Cumulative Prior Preferred Stock, 5% Convertible Series, plus $5.50 in cash, for 1 share of present Convertible Preferred Stock (as reclassified into Class A Preferred Stock) and a release of all claim to accumulated unpaid dividends on the present Convertible Preferred Stock on the conditions stated in the plan.
Under this language it appears that there was an exchange of 1.4 shares of new stock and $5.50 in cash for one share of old stock “and a release of all claim to accumulated unpaid dividends” (italics supplied) on the old stock, and that four-tenths share of stock was not exchanged merely “for the release of all claim to accumulated unpaid dividends” on the old stock. The printed “Plan of Recapitalization” under the heading “Offer of Exchange” provides that the holders of old stock “will be offered in exchange therefor 1.4 shares of the Cumulative Prior Preferred Stock, 5% Convertible Series, and $5.50 in cash, on the terms and conditions hereinafter set forth”; and that:
By making the exchange, holders of the existing Oumulative Preferred Stock will thereby release, relinquish and discharge their claim to all dividends accrued and in arrears on the outstanding Cumulative Preferred Stock.
From this language it appears that by makmg the exchange of stock for stock the holders of the old stock “will thereby release, relinquish and discharge their claim to all dividends accrued and in arrears” [italics supplied] on the old stock. Another letter to the stockholders of June 7, 1937, says that “By accepting the offer and making the exchange, holders of the Convertible Preferred Stock will thereby release, relinquish and discharge their claim to all dividends accrued and in arrears on such Preferred Stock.” A resolution of petitioner’s board of directors on July 15, 1937, declaring the “Plan of Recapitalization” effective as approved by the stockholders on May 26, 1937. and referring to the new stock, says: “* * * *1302 such stock to be issued in exchange for, and in consideration of the delivery to the Corporation for cancellation of, shares of the [old stock] * * * on the basis of 1.4 shares of such new Cumulative Prior Preferred Stock, 5% Convertible Series, and $5.50 in cash, for each share of” the old stock. The same resolution recites “that in the opinion of this Board of Directors the present value of the full consideration, i. e., shares without par value [of the new stock] * * * together with the release and discharge of all claims to accrued unpaid dividends [on the old stock] * * * amounting to $45.50 per share * * * to be received by this Corporation for the issuance of its shares of new Cumulative Prior Preferred Stock * * * is not less than $140 per share for each share of such Convertible Preferred Stock and the said release so to be received as the consideration for the issuance of the shares of new Preferred Stock.” In the face of this language, we think it can not with reason be considered that there was, separate from the exchange of stock for stock, such an exchange of four-tenths share of stock for the right to unpaid accumulated dividends as to constitute payment of dividends to the extent of $45.50. Either the consideration for the 1.4 shares of new stock and $5.50 was one share of old stock and the release of the right to accumulate dividends, or the stock was exchanged for stock, thus complying with the text of section 112 (b) (2), (3) and (c) (1) and “thereby” there was effected the discharge of the right to dividends — which in effect is the same thing. One consideration appears for both the release of the old stock and the release of the right to accumulated dividends.
From all this we conclude that a consideration for the exchange is not separable between old stock and the right to dividends accumulated thereon. Recently, in South Atlantic Steamship Line, 42 B. T. A. 705, we had before us a situation very analogous to that herein present, and held:
In the course of readjustment of the capital structure of a corporation petitioner exchanged preferred stock upon which dividends were in arrears for new stock, bonds, and cash. Held, that receipt of the new stock was neither a dividend nor essentially equivalent to a dividend under section 115 (a) and 115 (g) of the Revenue Act of 1936; held, further, that the stock, debenture bonds, and cash were received by petitioner in the course of a reorganization and gain is recognized under section 112 (c) (1) only to the extent of the cash received.
The petitioner urges that the question there was merely one of recognition or nonrecognition of gain or loss under the sections of the statute above noted in the quotation, while here we have a different-question, that is, whether there is a right to dividends paid credit under section 27. But petitioner’s right to a dividends paid credit depends fully upon whether the distribution is taxable under section 27 (h). If it were true that the distribution is a “dividend” it must *1303 still be taxable under section 27 (h), and in the South Atlantic Steamship Line case, supra, we held that it is not. Therefore it seems inescapable that the South Atlantic Steamship Line case is controlling here, for there, as here, there was exchange of preferred stock upon which dividends were in arrears for new stock and cash (and bonds not here involved). The respondent there took the position which petitioner takes herein, that is, “that the noncumulative preferred stock was received by petitioner in exchange for arrears in dividends on the old stock and is taxable as a corporate dividend.” The respondent also urged that the petitioner there realized recognizable gain “on the receipt of new preferred stock, debenture bonds, and cash.” The petitioner contended that the gain was recognized only to the extent of the cash received. We held that the readjustment of capital structure was recapitalization within the statutory definition of section 112 (g) (1) (D) and that the exchange of securities was made pursuant to that plan and under sections 112 (b) (3) and 112 (c) (1). Further, upon respondent’s contention “that the right to undeclared accumulated dividends is separate and apart from the preferred shares” and therefore essentially equivalent to a dividend, we cited Commissioner v. Food Industries, Inc., 101 Fed. (2d) 748, where the holders of preferred stock upon which dividends were accrued but unpaid “received common stock of a new corporation in exchange for the preferred stock and also received sinking fund debentures of the new corporation for the arrearages in dividends” and where the court held that the receipt of common stock and sinking fund debentures was not taxable. Commenting on the Food Industries case, we said: “The right to arrears and dividends was not considered apart from the stock upon which the arrearages arose.” We called attention to the fact that the same reorganization with respect to other shareholders was considered “by the Circuit Courts of Appeals for the First, Second, Fourth, and Ninth Circuits with the same result. Commissioner v. Whitaker, 101 Fed. (2d) 640; Helvering v. Schoellkopf, 100 Fed. (2d) 415; Helvering v. Leary, 93 Fed. (2d) 826; Commissioner v. Kolb, 100 Fed. (2d) 920.”
From the above it appears that there was more reason in Commissioner v. Food Industries, Inc., supra, to separate the arrearages in dividends from the stock than there is here, because there they were exchanged not for the stock, but for “sinking fund debentures of the new corporation” while here they were exchanged for a consideration common to them and to the old stock.
Being unable to distinguish the present proceeding in principle from the authorities above cited, we conclude and hold that there was a nontaxable exchange within the purview of sections 112 (b) (2), (3) and (c) (1) and 112 (g) (1) (D) of the Revenue Act of *1304 1936, and that therefore under the provisions of section 27 (h) of the same act no dividends paid credit is allowable to the petitioner, and that the respondent did not err in denying the credit claimed.
2. Our conclusion on the first issue is decisive of the second, wherein petitioner claims deduction as ordinary and necessary expenses of $15,000 paid for attorneys’ fees in connection with the transaction hereinabove discussed. The parties agree that the amount was reasonable for the services rendered in the matter. Since we have above held the transaction to be a reorganization by recapitalization under section 112 (g) (1) (D) of the Revenue Act of 1936, it follows that the amounts paid therefor are capital expenditures. Holeproof Hosiery Co., 11 B. T. A. 547; Odorono Co., 26 B. T. A. 1355. We hold that the respondent did not err in denying the deduction.

Decision will he entered under Rule 50.

 (h) Nontaxable Distributions.- — If any part of a distribution (including slock dividends and stock rights) is not a taxable dividend in the hands of such of the shareholders as are subject to taxation under this title for the period in which the distribution is made, no dividends paid credit shall be allowed with respect to such part.

 SEC. 112. RECOGNITION OF GAIN OR LOSS.
[[Image here]]
(b) Exchanges Solely in Kind.—
*******
(2) Stock: por stock op same corporation. — No gain or loss shall be recognized If common stock in a corporation is exchanged solely for common stock in the same corporation, or if preferred stock in a corporation is exchanged solely for preferred stock in the Bame corporation.
(3) STOCK POR STOCK on reorganization. — No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities In such corporation or In another corporation a party to the reorganization.
[[Image here]]
*1299 (c) Gain From Exchanges Not Solely in Kind.—
(I) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5) of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.
[[Image here]]
(g) Definition of Reorganization. — As used in this section and section 113—
(1) The term “reorganization” means * * * (D) a recapitalization * * *.

 SEC. 115. DISTRIBUTIONS BY CORPORATIONS.
*******
(h) Effect on Earnings and Profits of Distributions of Stock. — The distribution (whether before January 1, 1936, or on or after such date) to a distributee by or on behalf of a corporation of its stock or securities or stock or securities in another corporation shall not be considered a distribution of earnings or profits of any corporation—
(1) if no gain to such distributee from the receipt of such stock or securities was recognized by law, or
(2) if the distribution was not subject to tax in the hands of such distributee because it did not constitute income to him within the meaning of the Sixteenth Amendment to the Constitution or because exempt to him under section 115 (f) of the Revenue Act of 1934 or a corresponding provision of a prior Revenue Act.
As used in this subsection the term “stock or securities” includes rights to acquire stock or securities.