OCHOA FERTILIZER CORPORATION, Petitioner, *v.* TAX COURT
OF PUERTO RICO, Respondent; TREASURER OF PUERTO RICO,
Intervener.

No. 169.   Argued February 3, 1948.—Decided March 18, 1948.

*Córdova & González* and *Carlos J. Faure* for petitioner.   *Luis Negrón
Fernández, Attorney General,* and *J. Rivera Barreras, Assistant
Attorney General,* for intervener, respondent in the main action.

MR. JUSTICE SNYDER delivered the opinion of the Court.

Did the Tax Court err in holding that the tax exemption
granted to the petitioner in 1940 by the Public Service Com-
mission pursuant to Act No. 94, Laws of Puerto Rico, 1936,
does not include license fees for motor vehicles?

The first question is whether such a fee is a tax.
The petitioner concedes that under the police power the Leg-

islature may provide for regulation of traffic and that fees collected to defray the expenses of such regulation are not taxes. But it argues that such fees are taxes where revenue is the primary and regulation only the incidental purpose of license fees. And, according to the petitioner, the latter condition obtains here because (1) the sums collected—ranging from $500,000 to $1,500,000 annually between 1942 and 1946— greatly exceed the cost of regulation; (2) these fees from 1937 to date have been covered into a special trust fund, not for the costs of regulation, but for construction of highways in order to comply with the Federal Highway Act, 23 U.S.C.A. §§ 55, 41(a):[1] and (3) the expenses of the Automobile Division of the Department of Interior have been paid not from the license fees but out of general funds assigned in the General Appropriation Act.

The cases on which the petitioner relies involve constitutionality of the statutes in question. For various reasons, most of them hold that these statutes would be invalid if they provided for taxes and valid if they were designed to defray expenses for regulation. *Vernor* v. *Secretary of State,* 146 N.W. 338 (Mich., 1914); *Ex Parte Schuler,* 139 P. 685 (Calif., 1914); *State* v. *Wetz,* 168 N.W. 835 (N.D., 1918); *Firestone* v. *City of Cambridge,* 148 N.E. 470 (Ohio, 1925); *Carley & Hamilton* v. *Snook,* 281 U.S. 66; *Sprout* v. *South Bend,* 277 U.S. 163; 4 Cooley, The Law of Taxation, 4th ed., § 1784, pp. 3509–16.[2] None of these cases involves the question of whether a tax exemption includes license fees.

---

[1] Act No. 143, Laws of Puerto Rico, 1937; Act No. 140, Laws of Puerto Rico, 1940; Act No. 55, Laws of Puerto Rico, 1942; Act No. 279, Laws of Puerto Rico, 1946.

[2] Cf. *Murdock* v. *Pennsylvania,* 319 U.S. 105, 113–114; *County Com'rs of Anne Arundel County* v. *English,* 35 A.(2) 135 (Md., 1943); Article 113, Income Tax Regulations, No. 1; 5 Mertens, Law of Federal Income Taxation, § 27.05, pp. 20–21, § 27.34, pp. 41–42; Holeproof Hosiery Co., 11 B.T.A. 547; Bank of Mount Hope, 25 B.T.A. 542; *City of Charlottesville* v. *Marks' Shows,* 18 S.E.(2) 890 (Va., 1942); *Lamere* v. *City of Chicago,* 63 N.E.(2) 863 (Ill., 1945); *Maryland Theatrical Corporation* v. *Brennan,* 24 A.(2) 911 (Md., 1942).

On the other hand, the Treasurer cites other cases some of which apparently hold that even though the fees collected exceed the amount needed for regulation, license fees exacted for operation of motor vehicles on the highways are not taxes. *Atkins* v. *State Highway Department*, 201 S.W. 226 (Tex., 1918); *Ard* v. *People*, 182 P. 892 (Colo., 1919); *Carter* v. *State Tax Commission*, 96 P. (2) 727 (Utah, 1939); *Foshee* v. *State*, 72 So. 685 (Ala., 1916); 1–2 Huddy, Cyclopedia of Automobile Law, 9th ed., § 137, pp. 331–2. Cf. *The RFC Mortgage Co.* v. *Registrar*, 60 P.R.R. 230; *Félix* v. *Esteves*, 41 P.R.R. 712.

Our problem is wholly different from the issues of constitutionality raised by the cases cited by both parties. Here we are concerned only with the intent of the Legislature in conferring power on the Public Service Commission to grant tax exemptions. We therefore assume, without deciding, that the contention of the petitioner is correct and that these license fees are, broadly speaking, classified as taxes, at least to the extent that the revenue therefrom exceeds the costs of regulation. In the same way we assume, although this license fee is not a classical excise on sale or use, that it is an additional excise.[3] But these assumptions do not necessarily mean that the petitioner must prevail here. They merely lead us to consideration of the second assignment of error.

In the second assignment the petitioner contends that the Tax Court erred in holding that the Commission was not authorized to include license fees in the tax exemptions the latter was empowered to grant under Act No. 94. Sections 3 and 4 of the Act read in part as follows:

---

[3] We cannot agree with the Treasurer that these license fees are tolls. A toll is charged for the privilege of passage over a highway or bridge whenever that privilege is exercised. A license fee is collected for use of motor vehicles without reference to any particular highways or to the extent or frequency of use. *Carley & Hamilton* v. *Snook*, supra, 73–74. Indeed, as pointed out in the *Snook case*, § 9 of the Federal Highway Act prohibits the collection of tolls for the use of roads constructed under the Act.

"Section 3.—The Public Service Commission of Puerto Rico is hereby authorized to grant *tax exemption* to all such new industries as may be established in Puerto Rico, and its decisions shall have the approval of the Governor of Puerto Rico. The new industries to which *tax exemption* is granted, as well as their buildings, machinery, materials and, in general, all such property, rights, and privileges owned by them as are essentially required for their work and operation, shall be exempt from taxes for such term as the Public Service Commission of Puerto Rico may prescribe, which term shall in no case exceed ten (10) years, and shall be counted from the date on which the industrial installation is completed; *Provided,* That such tax exemption shall not include income taxes to be paid by the person, firm, partnership, or corporation operating the new industry, or the assessments under the Workmen's Compensation Act. . . .

"Section 4.—Whenever the Public Service Commission of Puerto Rico shall grant to a new industry the tax exemption provided in this Act, the *municipality* in which the said new industry is located shall be bound to acknowledge such exemption, and, in consequence, it shall not be allowed to collect from the said new industry any permit, *license,* or municipal excise taxes, or any other municipal tax, during the term of the exemption granted; *Provided,* That no exemption from the payment of municipal taxes, *license fees,* or excises shall be decreed without first hearing the affected municipality." (Italics ours).

The opinion of the Tax Court reads in part as follows:

"It should be noted that Section 3, *supra,* authorizes the Public Service Commission to grant *tax exemptions* to all new industries established in Puerto Rico, but it does not provide for exemption from payment of *insular* licenses. It is Section 4, *supra,* which refers to *municipal licenses,* permits, etc.

"It is therefore obvious that Act No. 94 of 1936, *supra,* does not empower the Public Service Commission to grant to new industries exemptions from payment of *insular* licenses, and consequently the Commission. if it granted this privilege to the plaintiff, could not have done so validly."

We see no escape from this interpretation of Act No. 94. In the tax exemption it granted the petitioner, the Commission undertook to exempt it "from all types of taxes and

license fees, municipal license or excise taxes or any other municipal tax ..." This covers insular license fees, whether they be classified as taxes for revenue or fees to defray the expenses of regulation. But the difficulty lies in the fact that Act No. 94 conferred no such broad power on the Commission to exempt the petitioner from payment of license fees, even if it be conceded that they are taxes.

If motor vehicle license fees were always imposed exclusively for revenue, the petitioner might have a better case. But although theoretically possible, such license fees are not usually exacted solely for revenue. Ordinarily, even where imposed primarily for revenue, they have incidental, but substantial, regulatory features. This contrasts with the classical excise taxes which, broadly speaking, generally have no substantial element of regulation and are almost solely for revenue. Cf. *Porto Rico Telephone Co.* v. *Tax Court, ante,* p. 144.

█ The fact that the funds collected from license fees are covered into the general funds of the Treasury, or into a special fund for purposes other than regulation, does not necessarily mean that provisions for license fees are purely tax measures. See 4 Cooley, *supra,* p. 3516; *Vernor* v. *Secretary of State, supra; Carter* v. *State Tax Commission, supra,* p. 731.

There are other features of the motor vehicle license fee which distinguish it from the ordinary tax, which is an exaction for the support of government and which is customarily applied involuntarily to all persons falling into certain definite classes. Payment is not required if the owner keeps the vehicle in his garage; if it is used only a portion of the year, only a proportionate part of the fee is paid; it may be cancelled under certain circumstances, despite payment of the fee; and license tags must be displayed, whether or not the fee is paid. In short, these license fees are not exclusively for revenue but are partly fiscal and partly regu-

latory. As such they represent a peculiar form of exaction which the Legislature did not intend to include under Act No. 94 which authorized tax exemptions. Indeed, it apparently never occurred to the petitioner that it was exempt from payment of these license fees during the five years—1942 to 1946—it paid $957.67 therefor.

■ The careful distinction drawn in §§ 3 and 4 of Act No. 94 between license fees and other types of "taxes" has its counterpart in § 3 of the Organic Act. Congress thought it wise in 48 U.S.C.A. § 741 to set out license fees, perhaps in view of their nature as partly regulatory and partly fiscal, as a special category of "taxes" which the Legislature was specifically authorized to levy. This was done even though it could be argued with considerable force that the authority conferred by § 3 of the Organic Act to impose internal revenue taxes included the power to exact license fees. See *Buscaglia* v. *Ballester*, 162 F. (2) 805 (C.C.A. 1st, 1947). Cf. *Rivera* v. *Buscaglia*, 146 F. (2) 461 (C.C.A. 1st, 1944) ; *Domenech* v. *Havemeyer*, 49 F. (2) 849 (C.C.A. 1st, 1931).

The argument might be made by the petitioner that even classical taxes, as well as license fees, are sometimes imposed for regulation as well as revenue, and consequently the regulatory feature of license fees does not differentiate them from taxes, as defined in Act No. 94. But overtones of regulation only occasionally crop up in such tax measures, whereas regulation is a frequent, if not almost invariable, feature of legislation providing for license fees. And regulation certainly plays a large, even if incidental, role in our statutes prescribing motor vehicle license fees. While the matter is not free from difficulty, we cannot say the possible regulatory feature that lurks in some classical taxes requires us to classify a license fee, which usually has a prominent regulatory aspect, as a tax. Indeed, the very difficulty of the matter operates to defeat the claim of the petitioner. "Tax exemptions cannot be inferred; they must be specifically provided

for in plain and unambiguous language (Citations). We find no such specific language'' in Act No. 94 for insular license fees. *Puerto Rico Ilustrado* v. *Buscaglia, Treas.,* 64 P.R.R. 870, 874; *National Hats Co.* v. *Sancho, Treas.,* 65 P.R.R. 226; *Crown Beverages* v. *Buscaglia, Treas.,* 65 P.R.R. 766, 770, footnote 5.

*Pacific Gas & Electric Co.* v. *Roberts,* 168 Calif. 420 (1914), on which the petitioner relies, does not aid the latter. In that case it was held that a constitutional provision for a gross receipt tax ''in lieu of all other taxes and *licenses,* state, county and municipal'' exempted a public service corporation from license fees for operation of motor vehicles. But the point is precisely that our statute does not specifically authorize exemption from license fees. And see *Connecticut Light & Power Co.* v. *Walsh,* 16 L.W. 2381 (Conn., January 21, 1948.)

The petitioner also relies on *Buscaglia* v. *Tax Court,* 66 P.R.R. 670, where we held that the petitioner is exempt from the classical excise taxes, and on *Buscaglia* v. *Tax Court,* 67 P.R.R. 53, where we said that (p. 56) '' . . . the Legislature of Puerto Rico, since 1919, has adopted the policy of exempting particular industries from the payment of taxes and excises, thus contributing in a practical way to the promotion and development of insular industrialization.'' But, as we have seen, both Congress in the Organic Act and the Legislature in Act No. 94 have placed license ''taxes'' in a special category in view of their peculiar status as partly fiscal and partly regulatory. They therefore did not fall within the general terms of Act No. 94 providing for tax exemptions, which include the ordinary excises. Only if the Legislature had specifically empowered the Public Service Commission to grant exemptions from license fees could that action be taken by the Commission. That was not done in Act No. 94. On the contrary, Act No. 94 provided specifically for exemption from all kinds of insular taxes, except license fees. Sec-

tion 4 of Act No. 94 authorizes exemption from municipal, but not from insular, license fees. The Public Service Commission therefore lacked authority to include insular motor vehicle license fees in the tax exemption it granted the petitioner.

The result we have reached makes it unnecessary to examine the contentions of the Treasurer with respect to his authority to make a refund of license fees and the jurisdiction of the Tax Court.

The decision of the Tax Court will be affirmed.